Petra, Víctor Manuel e Isabelo Luis Colón Villegas, et als., demandantes apelados, *v.* White Star Bus Line, Inc., demandada, y The Porto Rican and American Insurance Co., apelante.

Núm. 8730.—*Sometido:* Noviembre 17, 1943. *Resuelto:* Marzo 31, 1944.

*Brown, González & Newsom y Carlos J. Faure,* abogados de la apelante; *Mariano Acosta Velarde y Federico Acosta Velarde,* abogados de los apelados.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

Regina Villegas Figueroa perdió la vida como consecuencia de heridas recibidas al ocurrir una colisión entre un tranvía de la Porto Rico Railway, Light & Power Co. y un autobús propiedad de la White Star Bus Line, Inc. en el cual viajaba como pasajera. Demandada la White Star Bus Line, Inc. por los herederos de la finada, la Corte de Distrito de San Juan dictó sentencia con fecha 25 de junio de 1941, condenando a la corporación demandada a pagar la suma de $4,000.

No habiendo satisfecho la corporación demandada la sentencia dictada en su contra, los demandantes radicaron una "Moción sobre Citación de Fiadores", en la cual solicitaban de la corte dictara una orden citando a The Porto Rican and American Insurance Co., para que compareciera a mostrar

causa por la cual no debiera estar obligada, como fiadora de la White Star Bus Line, Inc., al pago de la sentencia.

Expedida la orden solicitada, contestó The Porto Rican and American Insurance Co., oponiéndose a las pretensiones de los demandantes. Oídas las partes sobre las cuestiones planteadas, la fiadora, The Porto Rican and American Insurance Co. se allanó a que dentro del pleito y por el procedimiento de "citación de fiadores" utilizado por los demandantes se determinara su responsabilidad, sometiéndose, mediante estipulación de hechos, el asunto a la consideración de la corte. Esta, por resolución de fecha 23 de marzo de 1943, declaró con lugar la "Moción sobre Citación de Fiadores" y después de determinar que The Porto Rican and American Insurance Co. estaba sujeta al pago de la sentencia dictada en el pleito contra la White Star Bus Line, Inc., por razón de la fianza que tenía prestada ante la Comisión de Servicio Público a la fecha del accidente que motivó el pleito, condenó a dicha compañía fiadora a satisfacer a los demandantes el importe de la sentencia.

No conforme con dicha resolución, The Porto Rican and American Insurance Co., ha entablado el presente recurso de apelación contra la misma para ante este Tribunal.

Los hechos, según quedaron estipulados por las partes, son, en resumen, los siguientes:

En julio 11 de 1937, fecha en que ocurrió el accidente, la White Star Bus Line, Inc. era una compañía de servicio público dedicada al transporte de pasajeros dentro y entre los municipios de San Juan y Río Piedras, habiendo sido autorizada a prestar dichos servicios por franquicia núm. 586 de 12 de abril de 1927. El párrafo 11 de dicha franquicia dice lo siguiente:

"Sección 11.—Antes de comenzar a hacer uso de las facultades y deberes de esta franquicia, la concesionaria suministrará una buena y suficiente fianza como garantía adicional, expedida por una compañía de fianzas legalmente autorizada para hacer esta clase de negocios en Puerto Rico, la cual fianza llevará como condición la de

responder del pago de cualquier sentencia final dictada por un tribunal competente a favor de cualquier persona que sufriere daño a su persona o a sus intereses o a favor de sus herederos en caso de su muerte como consecuencia del sostenimiento o uso de cualquier guagua de la concesionaria que funcione por virtud de esta franquicia como porteador. Dicha fianza será por una suma no menor de cincuenta mil (50,000) dollars, y estará sujeta a la aprobación de la Comisión de Servicio Público después de ser examinada por el Procurador General de Puerto Rico en cuanto a forma y otorgamiento. Después de ser aprobada por la Comisión de Servicio Público, dicha fianza será archivada por el Secretario de dicha Comisión.

"La Comisión de Servicio Público de Puerto Rico se reserva el derecho de requerir en cualquier tiempo una nueva fianza y fijar el montante y las condiciones de la misma, después de oír a la concesionaria."

La fianza prestada por The Porto Rican and American Insurance Co., a requerimiento de la White Star Bus Line, Inc., en su parte dispositiva dice como sigue:

"Por tanto, nosotros 'White Star Bus Line, Inc.' como principal y 'The Porto Rican and American Insurance Co.' corporación constituída de acuerdo con las leyes de Puerto Rico teniendo su oficina principal en San Juan, Puerto Rico, como fiadora, nos constituímos, la primera, como tal principal y la segunda como fiadora, mancomunadas y solidariamente a favor de cualquier persona y nos comprometemos a satisfacer hasta la suma de $25,000, previo fallo condenatorio de un tribunal competente y mediante sentencia firme con motivos de lesiones, daños o perjuicios en su persona o intereses, o a sus herederos en caso de muerte, por virtud de cualquier accidente ocurrido y debido al uso de cualquiera de los vehículos de motor comprendidos en la autorización concedida por la Hon. Comisión de Servicio Público para la transportación de pasajeros entre San Juan y Río Piedras, y cualquier otro punto comprendido entre estas dos municipalidades, así como también con motivo de lesiones, daños o perjuicios que se originen con cualquier vehículo propiedad de la 'White Star Bus Line, Inc.' y utilizado para el servicio, y vigilancia de los vehículos destinados para la transportación de pasajeros; excluyendo, las lesiones, daños o perjuicios que sufran los *chauffeurs*, cobradores, inspectores y/o cualquier otro empleado utilizado por la 'White Star Bus Line, Inc.' en el citado servicio de transportación, cuidado o vigilancia de los citados vehículos."

La expresada fianza fué aprobada por la Comisión de Servicio. Público con fecha 26 de julio de 1928, y en la fecha en que ocurrió el accidente estaba vigente.

The Porto Rican and American Insurance Co. sostiene que no es responsable de la sentencia dictada en contra de la White Star Bus Line, Inc., toda vez que de acuerdo con los términos de la fianza es requisito indispensable o condición precedente para que surja responsabilidad por parte de la fiadora que haya una sentencia final y firme; y que en el caso de autos, tanto la sentencia de esta Corte Suprema como la de la Corte de Distrito de San Juan fueron dictadas después de julio 11 de 1938, fecha en que se canceló oficialmente la fianza por la Comisión de Servicio Público. Alega además la fiadora, que en el supuesto de que fuera responsable bajo la fianza mencionada, no procede acción alguna en su contra hasta tanto los demandantes no procedan a ejecutar la sentencia en la propiedad de la demandada y a hacer excusión de bienes en la propiedad de la demandada; y que en el supuesto de que la fiadora fuera responsable de la sentencia dictada en el caso, su responsabilidad se extendería solamente hasta un 50 por ciento de la suma total, toda vez que así se estipuló expresamente en la fianza, cuyo penúltimo párrafo lee como sigue:

"Se estipula expresamente que la Maryland Casualty Company of Baltimore, ha expedido, por mediación de sus agentes autorizados en Puerto Rico, otra fianza por la suma de $25,000.00 (Veinticinco Mil Dollars) con la misma finalidad y carácter de este mismo documento y por consiguiente, cualquier sentencia, indemnización o pago de cualquier clase por concepto de lesiones, daños o perjuicios ocurridos a cualquier persona que de acuerdo y dentro de los términos de la Ley pueda establecer o tenga derecho a una reclamación contra el Principal en este documento, dicha reclamación, indemnización o pago, incluyendo todos los gastos y/u honorarios habidos o que puedan haber, serán satisfechos en proporción por cada una de las compañías a que se hace referencia."

Sostenía la fiadora que el contrato de fianza en que fundan los demandantes su reclamación fué concertado entre

dicha compañía fiadora y la White Star Bus Line, Inc. sujeto a la condición de que se expidiese y se mantuviese en vigor un contrato de fianza igual entre dicha White Star Bus Line, Inc. y la Maryland Casualty Company y que dicha condición fué violada y la Porto Rican and American Insurance Co. quedó relevada de toda responsabilidad bajo el mencionado contrato por razón de dicha violación porque con anterioridad a la fecha en que ocurrió el accidente que motiva la reclamación de los demandantes, el contrato entre White Star Bus Line, Inc. y la Maryland Casualty Co. fué cancelado sin notificación a, o consentimiento de la Porto Rican and American Insurance Co., cuyo contrato de fianza así cancelado no fué sustituído con contrato alguno.

Sin embargo, antes de quedar sometido el caso a este Tribunal, ambas partes estipularon que después de una inspección del expediente de la fianza prestada por la Maryland Casualty Company "se han dado cuenta que la Comisión de Servicio Público de Puerto Rico nunca ha aprobado una resolución cancelando dicha fianza de acuerdo con lo dispuesto por la Regla III del Reglamento de la Comisión de Servicio Público."

Dos son los errores imputados por la apelante a la corte sentenciadora:

"1. Al resolver que la responsabilidad de la compañía fiadora surgió en la fecha del accidente y no para la fecha en que la sentencia dictada en el pleito principal quedó firme.

"2. Al resolver que la fiadora era responsable de la totalidad de la sentencia dictada en favor de los demandantes y contra la White Star Bus Line, Inc."

■■ Conviene, antes de entrar en la discusión de estos alegados errores, que consideremos la naturaleza de la responsabilidad de la fiadora apelante para con la White Star Bus Line, Inc.

Alega la apelante que la Corte de Distrito de San Juan sostuvo, equivocadamente, que la relación creada por la ga-

rantía era una de asegurada y asegurador y que la garantía prestada tenía el carácter de "liability policy" o póliza de seguro contra responsabilidad, debiendo dicha relación regirse por la ley y los principios de seguros y no por el Código Civil, cuando en contrario cree y sostiene dicha apelante que el contrato en este caso es uno de fianza y como tal se rige por las disposiciones del Código Civil en su parte correspondiente.

La fianza exigida a la White Star Bus Line, Inc. y prestada por la Porto Rican and American Insurance Co., era un "surety bond". El "surety bond" no es otra cosa que una *fianza*. Nuestro Código, en su versión inglesa traduce el término fianza como "security" y "fiador" como "surety". Sin embargo, el Juez Asociado del Tribunal Supremo de Filipinas, Sr. Fisher, en su obra "The Civil Code of Spain", traduce el término fianza como "suretyship". Esta traducción del Juez Fisher nos parece más correcta que la nuestra, puesto que el término "security" usado por nuestro Código es más general y menos específico.

De la obra "Corpus Juris", tomo 50, pág. 12, §1, tomamos la siguiente definición de "suretyship":

"La relación de principal y garantizador o fiador, en su sentido más amplio, es la que ocupa una persona responsable del pago de dinero o de la ejecución de un acto por otra persona, siendo esa responsabilidad colateral en cuanto a esa persona, y que está expuesta a sufrir pérdida en el caso de que esa otra persona dejare de pagar o de realizar el acto, pero cuya responsabilidad termina por completo tan pronto como esa otra persona paga o realiza el acto. La fianza consiste en prestar crédito para ayudar a un principal cuyo crédito propio es insuficiente; y es un contrato directo para pagar la deuda del principal o cumplir su obligación en caso de que él dejare de cumplirla, aún cuando la obligación del fiador es accesoria a la del deudor principal."

No es, pues, otra cosa que una fianza, y así también aunque la palabra "bond" se ha traducido como fianza (véase 6 Phil. Digest 71) en realidad "bond" es más bien un documento formal. (Véase 11 C.J.S. 398, §1.)

Creemos, por lo tanto, que un "surety bond" no es otra cosa que una fianza por escrito y ante notario. El hecho que haya sido prestada por una compañía de seguros, como en este caso, en nada varía su naturaleza de fianza y aunque la fianza a título oneroso, artículo 1722, Código Civil, según Planiol se asemeja mucho al contrato de seguro, pues "el fiador garantiza al acreedor contra un riesgo (la insolvencia del deudor) y la suma pagada es una verdadera prima; . . . esta cuestión," dice Manresa al exponer la teoría de Planiol —"que antes podía tener cierto interés, en la actualidad carece de él, pues el Código en el artículo 1823 expresamente declara que la fianza puede ser gratuita o a título oneroso." (Manresa, "Comentarios el Código Civil" tomo XII, Edición 1931, págs. 153 y 154.)

Demostrado que un "surety bond" no es otra cosa que un contrato de fianza, como lo ha considerado la propia apelante, resolvemos que el contrato en el presente caso debe regirse por las prescripciones del Código sobre la fianza y no por la ley de seguro.

▮▮ Consideramos, primeramente, el segundo error señalado por la apelante, en lugar del primero, ya que creemos más lógico discutir en primer término la forma en que quedó obligada la apelante, que el momento en que surgió su responsabilidad.

En su segundo señalamiento de error sostiene la apelante que la corte inferior cometió error al resolver que la Porto Rican and American Insurance Co. era responsable de la totalidad de la sentencia dictada en favor de los demandantes en el pleito principal y contra la White Star Bus Line, Inc.

La fianza prestada en el caso de autos es impuesta por ley. Es, pues, una fianza legal, que es una de las clases de fianza que contempla el citado artículo 1722 del Código Civil. Ya en el caso de *Rondón* v. *Aetna Casualty & Surety Co.* (1940) 56 D.P.R. 439, estudió este tribunal la naturaleza

de la obligación contraída por este tipo de fianzas en cuanto a la responsabilidad de la fiadora, pero conviene distinguir aquel caso del presente en cuanto a este extremo. En aquel caso la obligación del fiador era la corriente entre principal y fiador en que el fiador se obliga a responder por el fiado en los casos de insolvencia o quiebra del principal. Pero en el caso de autos tenemos que la fiadora, The Porto Rican and American Insurance Co. se obligó solidariamente con la principal White Star Bus Line Inc. Una lectura de la parte dispositiva de la fianza núm. 424, antes transcrita, así nos lo demuestra. Esta situación la previene el Código Civil en su artículo 1721 donde dice:

"Artículo 1721.—Por la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste. Si el fiador se obligare solidariamente con el deudor principal, se observará lo dispuesto en la sección IV, capítulo III, título I de este libro."

Comentando el artículo 1822 del Código Civil Español del cual el 1721 de nuestro Código es equivalente, dice Manresa (obra y tomo citados) a la página 155:

"A pesar del carácter subsidiario de la obligación contraída por el fiador, que es lo que constituye una de las bases esenciales del contrato de fianza en su forma más común y corriente, puede perder, sin embargo, dicha condición, convirtiéndose en una obligación principal, si el fiador se obliga solidariamente con el deudor.

"No existe, en efecto, ninguna razón jurídica que a ello se oponga; y como en dicho caso pudiera surgir la duda de si a pesar de la cualidad accesoria propia de la fianza, habría lugar a exigir desde luego el cumplimiento de la obligación contraída por el fiador, o si, por el contrario, necesariamente había que dirigir antes la acción contra el fiado, previendo dicha dificultad, el legislador se ha apresurado a dar la conveniente solución de ella, siendo éste el objeto y el fundamento legal de la disposición consignada en dicho párrafo segundo, con la que se ha puesto término a las dudas que suscitaban con sus escritos los tratadistas, y a las cuestiones que el peculiar interés de las partes motivaba fundadas en las diversas teorías y en las distintas interpretaciones de nuestras antiguas leyes mantenidas por aquéllos.

"Según dicho precepto, cuando el fiador se obligare solidariamente con el deudor principal, habrá de observarse lo dispuesto en la sección 4a. del capítulo 3 del título 1 del presente libro, respecto de las obligaciones solidarias. Es decir, que en ese caso se considera al fiador como un principal obligado con la cualidad de *in solidum,* que es el carácter y la condición jurídica que entonces le corresponde, y en tal concepto puede dirigirse la reclamación contra él con independencia del deudor, o contra ambos simultáneamente."

Pero, como la solidaridad no se presume, sino que debe establecerse expresamente (artículos 1090 y 1091, Código Civil, Ed. 1930) será menester "que se manifieste el carácter solidario de la obligación, con cualquiera de las palabras solidario, *in solidum,* solidariamente, con que se puede formar la oración gramatical." (Scaevola, Comentarios al Código Civil, Tomo XIX, Ed. 1902, pág. 751). Así, llegamos a la conclusión, después de una lectura de la parte dispositiva de la fianza prestada por la Porto Rican and American Insurance Co., que ésta quedó obligada solidariamente, habiéndolo manifestado expresamente en dicho escrito.

Habiendo, pues, quedado obligada solidariamente la fiadora, la reclamación podía ser dirigida indistintamente contra ella o contra la White Star Bus Line, Inc., ya que ambas, a los efectos de los demandantes eran deudores principales. La cuestión es una que debe regirse por las disposiciones del Código Civil en cuanto a las obligaciones solidarias.

La fiadora en el caso ante nos se obligó solidariamente con la White Star Bus Line, Inc. y por tanto está obligada a satisfacer la reclamación de los demandantes en la misma forma en que lo estaba la compañía demandada en el pleito principal. No tiene, por tanto, derecho ni a una excusión de bienes en la propiedad de dicha demandada (artículo 1730, núm. 2, Código Civil), ni a que se devuelva sin satisfacer la orden de ejecución de sentencia por causa de insolvencia del deudor, como requisito previo para que los demandantes

354

pudieran dirigir su reclamación contra la apelante, pues se había obligado *in solidum*.

■ Sostiene, además, la apelante, que la corte .inferior erró al resolver que ella era responsable de la totalidad de la sentencia dictada en favor de los demandantes y contra la White Star Bus. Line, Inc.

Según la sección 11 de su franquicia, la White Star Bus Line, Inc. venía obligada a prestar una fianza no menor de $50,000 antes de comenzar a operar bajo dicha franquicia. Dicha fianza fué prestada, como ya hemos dicho antes, por dos compañías, la Porto Rican and American Insurance Co. y la Maryland Casualty Co., cada una obligándose por la suma de $25,000 como fiadoras de la White Star Bus Line, Inc. y, según consta en el penúltimo párrafo de la fianza antes transcrito, ambas compañías se comprometían a satisfacer cualquier reclamación, indemnización o pago, etc. que surgiera contra la principal, en proporción.

Pero es el caso que, según el artículo 1097, el acreedor puede dirigirse contra cualquiera de los deudores solidarios, como sucede en este caso, y según el artículo 1098, cada deudor solidario está obligado al acreedor por el total de la deuda. Naturalmente, que según determina el artículo 1725 el fiador puede obligarse a menos, pero no a más que el deudor principal tanto en la cantidad como en lo oneroso de las condiciones. Por estas razones, la Porto Rican and American Insurance Co. no venía obligada a pagar una cantidad mayor de $25,000. Ahora, siendo la sentencia por $4,000 y habiendo los demandantes dirigido su acción contra ella, la Porto Rican and American Insurance Co. venía obligada a satisfacer el total de la reclamación sin perjuicio de a su vez resarcirse de dicho pago reclamándole bien el total a la White Star Bus Line, Inc. o, en caso de insolvencia de ésta a la Maryland Casualty Co., la parte proporcional que, de acuerdo con el contrato venía obligada a satisfacer. (Artículos 1737, 1743, 1098, Código Civil.) A este respecto dice Manresa

que "el fiador obligado solidariamente con el principal deudor después de hecho el pago, en el caso de habérsele reclamado en primer término, puede repetir contra el fiado por la totalidad de lo que hubiere satisfecho por él. Es decir, que la obligación solidariamente contraída con el principal deudor no limita en lo más mínimo las acciones que le corresponderían si se hubiese constituído la fianza sin ese compromiso o sin esa obligación." (Manresa, obra citada, tomo XII, pág. 159.)

Alega la apelada, con razón, que la fiadora, Porto Rican and American Insurance Co., habiéndose constituído en fiadora solidaria de la White Star Bus Line, Inc. para responder en casos de fallos condenatorios contra ésta, tan pronto quedó final y firme la sentencia condenatoria contra la demandada en el pleito principal surgió la obligación de la fiadora, conjuntamente con la de la porteadora, de satisfacer dicha suma. Así lo entendieron los demandantes y dirigieron su reclamación contra dicha fiadora. De lo antes dicho, surge claramente la obligación de la apelante de satisfacer en su totalidad la suma reclamada por los demandantes.

En el primer señalamiento de error, que hemos dejado para último, se imputa a la corte inferior la comisión de error al resolver que la responsabilidad de la compañía fiadora, Porto Rican and American Insurance Co., surgió en la fecha del accidente y no para la fecha en que la sentencia dictada en el pleito principal quedó final y firme por resolución de este tribunal.

La fianza prestada por la apelante lo fué, indudablemente en garantía de una deuda futura, cuyo importe no era conocido al tiempo de prestarse dicha garantía, por lo cual, y de acuerdo con lo dispuesto por el artículo 1724 del Código Civil, "no se podrá reclamar contra el fiador hasta que la deuda sea líquida."

Tenemos, pues, que aún en el caso de autos, en que la fiadora lo era en carácter de solidaria, no podía reclamarse

contra ella hasta tanto la deuda fuese líquida, o sea hasta que un tribunal fijare la cantidad a ser pagada por la White Star Bus Line, Inc. o su fiadora solidaria, la apelante. Naturalmente que desde este momento únicamente era que se podía reclamar contra la compañía fiadora, puesto que hasta ese momento no había sentencia que obligase a pagar a la White Star Bus Line, Inc., ni se podía determinar el montante de la suma por la cual respondía la fiadora.

En realidad, la única cuestión a determinar es ¿cuándo surgió la obligación de la apelante?

Comentando el artículo 1825 del Código Civil Español, del cual es tomado el 1724 de nuestro Código, dice Manresa (obra y tomo citados, a la pág. 194, *in fine*):

"... la fianza es siempre, ... un contrato accesorio, y por eso no se concibe su existencia sin una obligación principal que asegure y garantice; pero esa circunstancia concurre en el supuesto a que se contrae el artículo que examinamos, puesto que existe una obligación anterior o coetánea al tiempo de la constitución´ de la fianza, aunque su cumplimiento o efectividad no sea de presente, sino para lo futuro, y su cuantía o importe sea desconocido por estar pendiente de liquidación."

Efectivamente, así acontece en el caso de autos. La White Star Bus Line, Inc. venía obligada a responder de los daños y perjuicios que causase en la operación de su franquicia y como una protección al público se le exigió por ley, como garantía adicional, que prestase una fianza para responder de las sentencias que en su contra se dictasen. Claro es que se trataba de una obligación incierta cuyo importe era desconocido, pero era una obligación existente al tiempo de la constitución de la fianza.

Ahora bien, ¿cuándo quedó obligado el fiador? Volvamos a Manresa. Nos dice éste (obra y tomo citados, pág. 195, in fine, y 196):

"En efecto, se dice, cuando es futura la obligación, la fianza es condicional, y, por lo tanto, no existirá, hasta que la condición se cumpla, es decir, hasta que la obligación principal *tome nacimiento*.

De aquí deducen la consecuencia de que el fiador *no queda ligado* hasta entonces, y que en el entretanto puede revocar su consentimiento, si bien con la carga de notificar al acreedor su cambio de voluntad.

"Pero, desde luego, se reconocerá que esta argumentación implica una confesión (¹) de ideas. Es cierto que el fiador que garantiza una obligación futura se obliga bajo condición; pero esto no importa para la subsistencia del vínculo jurídico pues él queda ligado por una obligación condicional, tan eficazmente como por una obligación pura y simple. Si el fiador pudiera desligarse de la obligación contraída, no sería exacto decir, como la ley lo dice, que es válida la fianza de una deuda futura, porque entonces la obligación, el vínculo jurídico, dependería de la voluntad de aquél en tanto no se cumpliese la condición, y es sabido que *una obligación que depende de la voluntad del que la hace no es tal obligación.* Si, pues, se admite que el fiador puede obligarse por una obligación futura, es preciso admitir que el fiador queda ligado por dicha fianza, y no puede desligarse de tal compromiso más que en los casos en que la ley lo permite y en la forma establecida por la misma, como veremos al comentar el artículo 1843.

"Es indudable que mientras no haya una obligación principal, no hay la de fianza, puesto que ésta requiere aquélla para su existencia, como se reconoce en el artículo 1824, y, por lo tanto, el fiador que se haya obligado por una deuda futura, no quedará sujeto a las consecuencias resultantes de la fianza más que cuando la obligación haya tomado nacimiento. Pero esto no prueba más que una cosa, y es que, si bien el afianzamiento de una deuda futura es un contrato condicional, la fianza queda subordinada desde un principio a la existencia de la obligación, y no puede revocarse ese consentimiento condicional, del mismo modo que tampoco puede ser revocado el consentimiento puro y simple."

La obligación contraída por la apelante lo era para garantizar a aquellas personas que reclamasen judicialmente contra la White Star Bus Line, Inc., por daños y perjuicios sufridos al operar ésta su franquicia. Así, mientras no surgieran litigios que pudieran culminar en la condena a la compañía de autobuses del pago de daños y perjuicios con-

---

(¹) NOTA: Creemos debe decir "confusión", pues así se dice en la ed. 1911, T. XII, pág. 215.

tra ella reclamados, la apelante no estaba garantizando obligación futura alguna y podía en cualquier momento revocar su garantía. Pero desde el momento en que surgía un litigio, máxime tratándose de una obligación solidaria, la apelante garantizaba al demandante del pago de la sentencia que pudiera recaer contra la demandada. Desde ese momento quedaba obligado por la obligación futura que había contraído y no podía revocar su garantía. Para todos los efectos, la fianza global prestada por la apelante venía a tener el mismo efecto que si cada vez que surgiese una acción contra la White Star Bus Line, Inc., ella prestase una fianza para garantizar el pago de una sentencia adversa a la porteadora pública. Así, pues, su obligación futura o condicional nace desde el momento en que se inicia un pleito contra la principal, y desde ese momento no podrá revocar su consentimiento.

En el caso de autos, la fiadora, al revocar su fianza lo hizo en el sentido global, es decir, la revocación era efectiva en cuanto a las acciones surgidas después de revocada dicha fianza, pero no lo era en cuanto a aquellas acciones surgidas con anterioridad a dicha revocación, y esa responsabilidad debe subsistir hasta que las dichas acciones hayan terminado por sentencia final y firme de una corte o por prescripción de la acción.

En el caso de autos la obligación de la fiadora comenzó desde el momento en que ocurrió el accidente, y no cesará hasta tanto no sea satisfecha la sentencia dictada en contra de la porteadora y a favor de los demandantes. Por todas estas razones somos de opinión que la Porto Rican and American Insurance Company viene obligada a pagar la suma que se reclama por los demandantes sin perjuicio de las acciones que pueda ejercitar luego contra la White Star Bus Line, Inc. o la Maryland Casualty Company, en resarcimiento de lo pagado.

*Debe confirmarse la sentencia apelada.*