**FEDERAL DEPOSIT INSURANCE CORPORATION, etc., Plaintiff, Appellee,**

v.

**Osvaldo CARDONA, et al., Defendants, Appellants.**

No. 83–1287.

United States Court of Appeals, First Circuit.

Argued Oct. 3, 1983.

Decided Nov. 30, 1983.

Francisco Castro Amy, San Juan, P.R., with whom Rafael F. Castro Lang, San Juan, P.R., was on brief, for appellants.

Omar Cancio-Martinez, Hato Rey, P.R., with whom Doval, Munoz, Acevedo, Otero & Trias, Hato Rey, P.R., was on brief, for appellee.

Before COFFIN and BOWNES, Circuit Judges, and SMITH,* Senior District Judge.

COFFIN, Circuit Judge.

Osvaldo Cardona executed three demand notes payable to the order of Banco Credito y Ahorro Ponceno (hereinafter "Banco Credito"). The first of these notes was made July 12, 1968, in the amount of $85,000 with interest at 8 percent; the second was made January 13, 1970, in the amount of $20,000 with interest at 9 percent; the third was made July 10, 1971, in the amount of $35,000 with interest at 8 percent.

Neither the maker nor the payee of these notes is now before the court, for death has overtaken the former, and bankruptcy has claimed the latter. The Federal Deposit Insurance Corporation ("FDIC") brought suit in the United States District Court for the District of Puerto Rico to recover on the notes, which were, it claimed, among the assets it had purchased from Banco Credito's receiver on March 31, 1978. From the district court's judgment in favor of FDIC, the heirs of Osvaldo Cardona bring this appeal.

Appellants raise three arguments on appeal. First, they contend that FDIC has not shown that it is the owner of the three notes on which it bases its claim to payment. Second, they argue that even if FDIC is the owner of the notes, its action to collect on the notes is barred by the statute of limitations. Third, they argue that the district court erred in finding that Cardona had acknowledged the debt and so had started the limitations period running anew.

■ Appellants base their first claim on the fact that the schedule of assets annexed

to the agreement of sale between FDIC and Banco Credito's receiver gives the dates of all the Cardona notes as July 25, 1975, and the interest rates as 8.25 percent per year. The notes on which FDIC demands payment have the dates and interest rates set out in the first paragraph of this opinion. Because these notes do not correspond in every particular to the description in the schedule of assets, appellants contend that FDIC has not established its title to the notes.

The other specifications set out in the partial schedule of assets do match those of the notes that are the subject of this suit. The notes described in the partial schedule of assets are demand notes; the name of the maker, the identification numbers of the notes, and the amounts due all correspond to those particulars on the notes FDIC presented for payment. The original amounts of the notes are also the same, with one exception explained by FDIC's witness as the result of a partial payment recorded on the back of that note. This evidence provides ample support for the district court's finding that the notes on which FDIC seeks payment are the same as the notes it purchased from Banco Credito's receiver.

Appellants argue that even if FDIC is the owner of the Cardona notes, its action to recover on the notes is barred by the statute of limitations. Because the Cardona notes were payable on demand, Banco Credito could have sued on them at once, and so the Puerto Rican statute of limitations would have begun to run as soon as the notes were executed and delivered. *In re Las Colinas,* 294 F.Supp. 582 (D.P.R.1968), *vacated and remanded,* 426 F.2d 1005 (1st Cir.1970), *aff'd,* 453 F.2d 911 (1st Cir.1971), *cert. denied sub nom. Banco Popular de Puerto Rico v. Las Colinas, Inc.,* 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972). The Puerto Rican statute of limitations that applied to the Cardona notes while they were in Banco Credito's hands was either the three-year statute of limitations that

* Of the District of Montana, sitting by designation.

applies to commercial loans, P.R.Laws Ann. tit. 10, § 1908 (1976), or the fifteen-year statute of limitations that applies to personal loans, P.R.Laws Ann. tit. 31, § 5303 (1968). We discuss below the question which of these local statutes applied to the loans before FDIC purchased Banco Credito's assets.

In *Federal Deposit Insurance Corp. v. Bird*, 516 F.Supp. 647 (D.P.R.1981), another action by FDIC to enforce rights acquired from Banco Credito, the district court found that when FDIC purchased the assets of Banco Credito, the six-year federal statute of limitations in 28 U.S.C. § 2415(a) applied to the actions arising from that purchase. The district court found, and the parties do not dispute, that the same statute applies to the action now before us. The federal statute of limitations provides that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues". In order to determine the effect of this statute on FDIC's action to recover on the Cardona notes, we must consider what is meant by the phrase "after the right of action accrues".

We note that two district courts have interpreted the phrase to mean that the government must bring its action within six years of the date when the original holder could first have sued on the note. *See United States v. Cardinal*, 452 F.Supp. 542 (D.Vt.1978); *United States v. Blackmon*, 496 F.Supp. 1250 (E.D.Ark.1980). Under this doctrine, FDIC's action on the oldest Cardona note would have terminated on July 12, 1974, *four years before FDIC acquired the note,* even though the fifteen year local statute of limitations would have allowed a private party in FDIC's position to bring an action on the same note five years *after* the date when FDIC acquired the note. We do not think the legislature's intent in enacting 28 U.S.C. § 2415 was to place the government at such a serious disadvantage relative to private parties suing on similar obligations.

When the FDIC purchases the assets of a bank, it should not be barred from bringing an action if a private party acquiring the same assets in the same manner would not be barred. If a private party would have more than six years remaining under the relevant state statute of limitations in which to bring its action, the FDIC should have at least the six years provided in 28 U.S.C. § 2415(a) in which to bring its action. In the case before us, we do not need to reach the question whether the six-year federal statute extended the time remaining to sue on the oldest Cardona note from five years to six, or whether it curtailed the time remaining to sue on the newest Cardona note from eight years to six; for under the fifteen-year Puerto Rican statute of limitations, the FDIC's action, which was brought September 24, 1980, would be timely.

Appellants argue, however, that the Cardona loans were commercial loans rather than private loans, and that under Puerto Rican law they were subject to the three-year statute of limitations. If the three-year statute applied, Banco Credito's action on the most recent of the notes, the one made July 10, 1971, would have been barred in 1974, four years before the FDIC acquired the notes on March 31, 1978. We think the district court correctly held in *Bird* that "the mere fact of the acquisition of the claims asserted in this action by the FDIC would not revive any claim which was already time barred by a Puerto Rican statute of limitations". 516 F.Supp. at 650. The success of appellants' argument depends, therefore, on their ability to show that the loans would be considered "commercial" under Puerto Rican law.

■ The Puerto Rican Code of Commerce provides that a loan cannot be "commercial" unless "one of the contracting parties is a merchant" and "the articles loaned are destined to commercial transactions". P.R. Laws Ann. tit. 10, § 1651 (1976). The statute of limitations is ordinarily an affirmative defense, and the elements that give rise to the limitation of an action must be plead-

ed and proved by the defendant. *See, e.g., Gordon v. National Youth Work Alliance,* 675 F.2d 356 (D.C.Cir.1982); *Equal Employment Opportunity Commission v. Roadway Express, Inc.,* 512 F.Supp. 590 (E.D.Tenn. 1981); *cf. San Miguel, Gonzalez & Valiente & Co. v. Guevara,* 64 P.R.R. 917, 920 & n. 2 (1945), *aff'd,* 156 F.2d 742 (1st Cir.1946) (holding that defendant's general demurrer was not sufficient to raise the bar of the statute of limitations, which must be specially pleaded). Appellants have brought forward no evidence to show that either of the elements necessary to establish a loan as "commercial" was present in the Cardona loans. Appellants argue, however, that they are entitled to a presumption that the Cardona loans were commercial loans. First, they point out that the schedule of assets attached to FDIC's agreement of sale lists the Cardona loans under the heading "commercial loans". Second, they cite *San Miguel* for the proposition that notes payable to order are presumed to be commercial loans under Puerto Rican law.

■ We are not persuaded by the fact that the Cardona loans appear under the heading "commercial loans" on the schedule of assets. The fact that a bank is one of the lending parties does not necessarily render the loans "commercial" in nature, for a bank may also make personal loans. *Banco de Puerto Rico v. Rodriguez,* 53 P.R.R. 430, 433 (1938). The fact that the bank characterizes the notes as "commercial loans" is also not dispositive: the bank's definition of "commercial loans" may be very different from the statutory definition, and it is the *statutory* definition that establishes the applicable limitations period. We note that Cardona's estate tax return lists his occupation as "farmer", and that a farmer's production and sale of agricultural goods is not considered a "commercial activity" under the Commerce Code of Puerto Rico. *See Banco de Puerto Rico v. Rodriguez,* 53 P.R.R. at 167 (citing with approval the trial court's holding that a loan could not be found to be commercial "since it has not been shown, in our opinion, that the money loaned was destined for commercial transactions, but rather that it was obtained and

used by the defendants in agriculture"). Thus, a bank might consider a business loan to a farmer a "commercial loan", but the loan would still be a personal loan under the Commerce Code of Puerto Rico.

Defendants also argue that they do not need to produce evidence that the Cardona loans were within the definition of "commercial loans" set out in the Commerce Code, because they are entitled to the benefit of a rebuttable presumption adopted by the Supreme Court of Puerto Rico that notes made payable to order evidence commercial loans. To prove the existence of this presumption, defendants cite the 1945 *San Miguel* case. The Supreme Court of Puerto Rico cites in *San Miguel* a decision of the Supreme Court of Spain to the effect that "promissory notes payable to order and endorsements made thereon should be considered as commercial instruments in accordance with article 2 of the Code of Commerce, *as they are expressly defined in the said law,* the presumption being therefore that they proceed from commercial transactions". 64 P.R.R. at 922 n. 3, *quoting Silvestre Ayoldi v. Banco de Espana,* 83 Civ. Jur. 160 (1898) (emphasis added). The Puerto Rican Code of Commerce was based on the Spanish Code of Commerce, and originally contained a section (Section 532) identical to the Spanish one defining order notes. *Pierluisi v. Monllor,* 42 P.R.R. 6, 15 (1931). It is plain that the Supreme Court of Puerto Rico considered order notes to be presumptively commercial because Section 532, defining the nature and effect of order notes, was part of the Commerce Code. In *Blondet v. Garau,* 47 P.R.R. 820 (1935), for example, the Supreme Court of Puerto Rico observed:

"Section 532 of the [Commerce Code] . . . provides that drafts payable to order between merchants and the bills or promissory notes likewise payable to order, which arise from commercial transactions, shall produce the same obligations and effects as bills of exchange, except with regard to acceptance, which is a quality pertaining to the latter only. This Court has repeatedly construed said

Section. Promissory notes made payable to order are subject to the presumption *juris tantum* that they are mercantile in character unless it is shown that they do not arise from commercial transactions." 47 P.R.R. at 822.

Section 532 of the Commerce Code was repealed in 1930, and this and other sections dealing with negotiable instruments were replaced by the Uniform Negotiable Instruments Act of 1930, codified at P.R.Laws Ann. tit. 19 (1961). The Negotiable Instruments Act deals with both commercial and private order notes, and so cannot be the basis for a presumption that order notes are commercial instruments. In *Blondet,* the Supreme Court of Puerto Rico implied that the repeal of Section 532 might change the order note presumption, which had governed its decision in that case: the court observed that the order note in question "was made in 1921, when Section 532 of the Code of Commerce, edition of 1911, was fully in force". 47 P.R.R. at 823. Although the court did not repudiate the order note presumption when it considered a 1931 order note in *San Miguel,* neither did it address the effect of the repeal of Section 532.

The district judge in the case before us did not find that appellants should have the benefit of this presumption, and we are entitled to rely on the district judge's familiarity with matters of Puerto Rican law. *Berrios Rivera v. British Ropes, Ltd.,* 575 F.2d 966, 970 (1st Cir.1978). We think the approach the Supreme Court of Puerto Rico would probably take is to require defendants to meet the explicit requirements of the present Code of Commerce by showing that the debts they wish to establish as "commercial loans" were contracted between merchants for commercial purposes. They offered no evidence on these points at trial; and even after the trial court had held that they were not entitled to a presumption that the loans were commercial, they did not argue to this court that they should have an opportunity to prove that the Cardona loans met the Code of Commerce requirements for "commercial loans". For these reasons, we believe it doubtful that defendants are entitled to the bar of the three-year statute of limitations. Instead, we think that the Cardona notes were subject to the fifteen-year statute of limitations applicable to private loans, and the FDIC's action to recover on those notes was timely.

Because our finding that the fifteen-year statute should apply is based on our interpretation of a rather uncertain area of Puerto Rican law, we do not rest our disposition of the case on this ground. Instead, we will address FDIC's alternative theory of recovery. The FDIC argues that even if a three-year statute of limitations barred the original claims on the Cardona notes, those claims were revived because Cardona acknowledged the debts in May of 1978 by making two interest payments on each note, and Cardona's executor acknowledged them again in December of 1981 by declaring them as liabilities on Cardona's estate tax return. The parties on both sides offer extensive (and often contradictory) reviews of the Puerto Rican law pertaining to the acknowledgment of debts. This discussion casts little light on our initial inquiry, since the Puerto Rican law of debts does not determine what effect an acknowledgment would have on FDIC's claims. FDIC had acquired the notes in March of 1978, two months before the first of the alleged acknowledgments took place. As we have already noted, the federal statute of limitations in 28 U.S.C. § 2415(a) applied as soon as FDIC acquired the notes; and so we must also look to this statute to determine what effect an acknowledgment of the debts would have.

The federal statute of limitations provides that "in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment . . . ." 28 U.S.C. § 2415(a). In *United States v. Glen Falls Insurance Co.,* 546 F.Supp. 643 (N.D.N.Y. 1982), the court noted that the purpose of this provision, as revealed in the legislative history, was to incorporate into the federal statute the common-law doctrine that an acknowledgment of a debt "raises a new

promise by the debtor to pay his existing debt". 546 F.Supp. at 645. This new promise "is enforceable, without any new consideration, in accordance with its own terms". *Id.* The FDIC would have six years from the time of an effective acknowledgment of the Cardona debts in which to bring an action for recovery, even if FDIC's action was barred at the time the acknowledgment was made. *See id.* and authorities there cited. The question we must address is whether FDIC has proved that there was an effective acknowledgment of the Cardona debts.

■ We consider first the argument that the Cardona estate tax return, which lists as liabilities of the estate the principal amounts of the notes and the interest owed on each, constitutes a new promise to pay the debts evidenced by the notes. Appellants argue that because the estate tax return was filed after FDIC brought its action to recover on the notes, the return could not affect the status of FDIC's action. The district court effectively disposed of this argument when it noted that "[i]n the case of *Vazquez v. Freiria,* 27 P.R.R. 764 (1919), the Honorable Supreme Court of Puerto Rico held that when an obligation is acknowledged after the action is filed, the action is revived even though the defense of prescription was timely raised in the answer to the complaint". Appellants have cited no authority, nor are we aware of any, that contradicts this assertion.

■ Appellants also argue that the listing of the debts in the estate tax return cannot constitute an acknowledgment of the debts, because an acknowledgment is not effective unless it is directed to the creditor. Professor Corbin, in his treatise on contracts, has noted that

"[t]he new promise to pay can be made in any form of expression, by word or act, that is capable of understanding and proof. It is very generally held that an acknowledgment that a sum of money is actually due, if made without any accompanying denial of willingness, justifies the inference of a promise to pay." 1A

A. Corbin, *Corbin on Contracts* § 216 (1963) (footnote omitted).

The written acknowledgment of a debt is not effective unless it is communicated to the creditor or communicated to a third person with the intent that the person communicate it to the creditor. *See e.g.,* Restatement (Second) of Contracts § 92 (1981); 51 Am.Jur.2d *Limitation of Actions* § 354, and cases cited at nn. 1 & 3 (1970); 1A *Corbin on Contracts* § 214. FDIC argues that the estate tax return meets this requirement because it is a public document and so constitutes an acknowledgment of the debt to all the world, including the creditor. FDIC's argument is supported by the Supreme Court of Puerto Rico's observation in *Diaz de Diana v. A.J.A.S. Insurance Co.,* 110 D.P.R. 471 (1980), that the acknowledgment of a mortgage debt in a deed recorded in the Registry of Property is "sufficient notice of the acknowledgement" to take the debt out of the limitations period. 110 D.P.R. at 483, discussing *Widow of Carlo v. Toro,* 99 P.R.R. 196 (1970). The acknowledgment of a debt in a company's annual report has also been held sufficient to remove the bar of the statute of limitations. *Clarkson Company Ltd. v. Shaheen,* 533 F.Supp. 905 (S.D.N.Y.1982). *See generally* 51 Am.Jur.2d *Limitation of Actions* § 358 and cases there cited (discussing the efficacy of acknowledgments made in public documents).

Although the listing of a debt in the schedule of creditors accompanying a petition in bankruptcy has been held insufficient to remove the debt from the statute of limitations, it is not any insufficiency in the method of acknowledgment that mandates this result. Indeed, courts addressing this question have held that the listing of the debt in the bankrupt's schedule "is an acknowledgement of the debt in the literal sense". *In re Povill,* 105 F.2d 157, 160 (2d Cir.1939). The bankrupt's acknowledgment of a debt fails to remove it from the statute of limitations because it does not imply an intent to pay the debt. Indeed, as the court noted in *In re Povill,* "it signifies an intent by the bankrupt *not* to pay". 105 F.2d at 160 (emphasis added). The same cannot be

said of the listing of the Cardona debts on the estate tax return. Although it is in the interest of the estate for the executor to list on the tax return all of the amounts that the estate may reasonably claim as liabilities, a scrupulous executor would not list any amounts that the estate intended not to pay. We may fairly draw the inference that the estate intended to pay the Cardona debts listed on the tax return; any, other interpretation would leave the estate's executor vulnerable to a charge of tax evasion. The district court correctly held that the notations on the Cardona estate tax return constituted an effective acknowledgment of the Cardona debts.

The FDIC also argues that Cardona's payment of interest on the notes in May of 1978 constituted an acknowledgment of the debts; appellants contend that the interest payments were not proved by competent evidence at trial. Because we have found that the estate tax return constitutes an effective acknowledgment, we have no need to reach the question whether the district court properly admitted evidence of the interest payments.

*The judgment of the district court is affirmed; appellants will bear the costs.*