**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**CONSOLIDATED MORTGAGE AND FINANCE CORPORATION, et al., Defendants.**

**Civ. No. 79–2279 HL.**

United States District Court, D. Puerto Rico.

July 15, 1988.

Stanley L. Feldstein, San Juan, P.R., Frank L. Skillern, Jr., Gen. Counsel, Myers N. Fisher, Asst. Gen. Counsel, Michael B. Brugee, Sr. Counsel, Wayne D. Baller, Atty., F.D.I.C., Washington, D.C., for plaintiff.

Jose A. Suro, Amadeo & Suro, Santurce, P.R., for Urbanizadora Altomar, Inc.

Juan M. Méndez Solís, Hato Rey, P.R., for Urbanizadora Acro, Inc.

Julio M. Rodríguez, Fiddler González & Rodríguez, San Juan, P.R., for Gerald N. Rosenberg and Malcolm Rosenberg.

## OPINION AND ORDER

LAFFITTE, District Judge.

This case was remanded by the First Circuit to determine the liability of co-defendant José A. Suro ("Suro") under certain promissory notes and letters of guaranty. We award judgment in favor of Federal Deposit Insurance Corporation ("FDIC") and against Suro, as guarantor, *in solidum,* in the amount of $9,810,925.20, plus interest and costs.

## I. FACTUAL BACKGROUND

1. Defendants Consolidated Mortgage and Finance Corporation ("Consolidated") executed notes, and Suro and José A. Amadeo executed letters of guaranty *in solidum* to evidence advances made by Banco Crédito y Ahorro Ponceño ("Banco Crédito") under four loan agreements entered between defendants and Banco Crédito. Consolidated received the proceeds from the loans. In turn, the proceeds would be given to Urbanizadora Altomar, Inc. ("Altomar"), Urbanizadora Acro, Inc. ("Acro"), and Urbanizadora Apriore, Inc. ("Apriore"), the defendant corporations involved in the development of real estate (Cupey Gardens, Alturas de Torrimar, and Urbanización La Teresita). Consolidated reserved the right to charge a commission from this transaction.

2. Apriore, Acro, and Altomar had each borrowed from Consolidated $2,132,869.50, $2,410,250.07, and $712,894.53 respectively. Since said corporations were unable to pay their obligations, on April 5, 1971 Consolidated loaned the three corporations an additional line of credit of $2,403,566.00 ("1971 agreement"). (Plaintiff's Trial Exhibit 6.) The outstanding debts were made part of the 1971 agreement. These loans were payable on demand. (Plaintiff's oppo-

sition brief to motion for summary judgment by Amadeo, Suro and Consolidated Exhibit 4.)

3. Specifically, on June 8, 1972, Banco Crédito agreed to lend up to $1,000,000.00 in a line of credit to Consolidated, Altomar, Acro, and Apriore, jointly. All amounts owed under this new loan agreement would mature automatically on April 5, 1975. Suro, Amadeo and decedent Carlos Prío Socarrás ("Prío") gave their written personal guarantees *in solidum* to this agreement. Consolidated also assigned its rights under the 1971 agreement to Banco Crédito (Plaintiff's Trial Exhibit 6.)

4. On December 13, 1972, Consolidated, Apriore, Acro, and Altomar again borrowed from Banco Crédito $3,165,000.00 in a line of credit. The notes or advances issued under this agreement would mature automatically on April 5, 1975. In the case of default in payment by the borrowers, the entire debt would be due on demand. Suro, Amadeo and Prío again gave their personal guarantees *in solidum* to this agreement. Said borrowers ratified both the April 5, 1971 and June 8, 1972 agreements. (Plaintiff's Trial Exhibit 7.)

5. On August 23, 1974, Consolidated, Apriore, Acro and Altomar borrowed $3,705,000.00 in a line of credit from Banco Crédito. The notes or advances issued under this agreement would be due on demand. Suro, Amadeo, and Prío gave their personal guarantees *in solidum* to this agreement. The debtors and guarantors ratified both the June 8 and December 13, 1972 agreements ("1972 agreements"). (Plaintiff's Trial Exhibit 8.)

6. The Secretary of the Treasury of the Commonwealth of Puerto Rico determined that Banco Crédito was in an unsound financial condition and insolvent pursuant to Article 30 of the Banking Law of Puerto Rico, 7 L.P.R.A. sect. 201. The Secretary ordered its closing and appointed FDIC as receiver. 12 U.S.C. sect. 1821(e). On March 31, 1978, FDIC, in its corporate capacity, purchased the assets of Banco Crédito, including the notes in question from FDIC, in its receivership capacity. 12 U.S. C. sect. 1823(e).

## II. PROCEDURAL HISTORY

On September 27, 1979, FDIC filed an action for collection of money and damages against defendants and later amended the complaint. During the district court proceedings, defendants Suro, Amadeo, and Consolidated moved for dismissal on the ground that FDIC's action was time barred. This Court denied said motion. *See* Opinion and Order dated August 21, 1984. We found, following the evidentiary hearing, that the obligations had been acknowledged by the annual report of Consolidated, the accounting records and financial statements of Altomar, the regular delivery of notes, and the numerous requests for advances made after March 31, 1975.

During a jury trial on FDIC's claim for collection of money, this Court awarded a directed verdict for FDIC in the amount of $9,810,925.20 against Consolidated, Suro, Amadeo, Altomar, Acro, and Apriore, jointly and severally. *See* Order dated May 23, 1985. Only Consolidated and Suro appealed the judgment. The First Circuit affirmed the judgment against Consolidated, and remanded for redetermination of whether or not the Puerto Rico three-year statute of limitations bars Suro's liability entirely or in part. *Federal Deposit Ins. Corp. v. Consolidated Mortg.*, 805 F.2d 14 (1st Cir.1986).

On remand, the following matters were to be considered:

(1) Whether the defendants' conduct was such that their separate identities should be disregarded, making the acknowledgments made by one affect all. In such event, the court should enter judgment against Suro.

(2) If the answer to the previous question is no, which notes would be time-barred as to Suro, subject to determination of other questions stated below.

(3) Whether Suro himself acknowledged the debts, before the FDIC acquired the notes, in a way consistent with the Supreme Court of Puerto Rico's statements as to the validity of the acknowledgments, so as to prevent him

from asserting the statute of limitations defense.

(4) If the answer to the previous question is no, whether any of Consolidated's acknowledgments were "public" so as to affect Suro even were Article 1875 of the Civil Code of Puerto Rico applicable to him as a joint surety.

(5) If the answer to the previous question is no, the district court should decide the issue of whether the rule applicable to *joint* sureties is that of Article 1874 or that of Article 1875, or, if it deems it necessary, certify this question to the Supreme Court of Puerto Rico.

*Id.* at 22–23.

At a status conference held on January 29, 1987, FDIC waived consideration of the first issue regarding defendants' conduct and their separate identities. Both parties subsequently submitted memoranda to the Court.

On September 1, 1987, an evidentiary hearing was held on the narrow issue of Suro's liability. Suro did not offer any documentary evidence. Suro had a standing objection to the presentation of any new evidence not already part of the record. Plaintiff introduced: the transcript of testimony of José A. Pérez, former Comptroller of Consolidated, at the evidentiary hearing held on August 25, 1984 (Exhibit 2), Suro's answer to interrogatory served by FDIC dated January 25, 1980 (Exhibit 3), Consolidated's annual report to the Puerto Rico State Department for 1977 (Exhibit 4), copy of three promissory notes (Exhibits 5–7), and copy of letters to Consolidated requesting authority to proceed in connection with the loans which were executed by Suro in his corporate capacity for Consolidated (Exhibits 8–15), all dated after March 31, 1976. The Court granted both parties time to file post-hearing memoranda of law. FDIC submitted a post-hearing memorandum of law. Suro filed an untimely two-page reply.

## III. DISCUSSION

### A. STATUTE OF LIMITATIONS

FDIC contends that the six-year statute of limitations under federal law applies to the case at hand. Specifically, FDIC argues that the six-year statute of limitations began to accrue on March 31, 1978, the day FDIC purchased the notes of Consolidated, and would have expired on March 31, 1984. FDIC claims this action was timely filed on September 27, 1979.

■ Under 28 U.S.C. sect. 2415(a), a six-year federal statute of limitations governs "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract expressed or implied." Nevertheless, FDIC cannot assert the six-year federal limitations statute if at the time it acquired the claims they were already time barred under local law. *Federal Deposit Ins. Corp. v. Roldan Fonseca,* 795 F.2d 1102, 1108 (1st Cir.1986); *Federal Deposit Ins. Corp. v. Cardona,* 723 F.2d 132, 134 (1st Cir.1983) *Federal Deposit Ins. Corp. v. Bird,* 516 F.Supp. 647, 650 (D.P.R.1981). In other words, if any of the notes acquired by FDIC on March 31, 1978 are barred by the three-year Puerto Rico statute of limitations,[1] the six-year federal statute of limitations is unavailing. We must determine which notes, if any, acquired by FDIC on March 31, 1978 were barred by the running of the Puerto Rico three-year statute of limitations.

FDIC argues, of course, that the Puerto Rico statute of limitations had not expired on any of the notes. FDIC contends that all loan agreements specified April 5, 1975 as the maturity date for all advances made thereunder. Since Banco Crédito could not legally demand payment before said date, FDIC argues, the three-year statute of limitations began to run on April 5, 1975 and would expire on April 5, 1978. Consequently, on March 31, 1978, when FDIC purchased the notes, the Puerto Rico statute of limitations had not expired and FDIC would have at least the six years

---

1. The First Circuit found that the loans in question were of a commercial nature and that therefore the three-year statute of limitations of

Article 946 of the Commerce Code of Puerto Rico, 10 L.P.R.A. sect. 1908 (1976) applied. *Consolidated Mortg.,* 805 F.2d at 17.

provided in 28 U.S.C. sect. 2415(a) in which to bring this lawsuit.

Contrary to FDIC's simplistic view of the notes, all the notes are not similarly situated. Some of the notes are due on demand and others are fixed on a day certain. Most refer to loan agreements.

Article 1078 of the Puerto Rico Civil Code, 31 L.P.R.A. sect. 3061 (1930), provides that "(o)bligations, the fulfillment of which has been fixed for a day certain, shall only be demandable when the proper day arrives." A note that is due on a certain date will prescribe three years after it has fallen due, whether or not it has been presented or protested. *Kuinlam v. Melendez,* 6 P.R.R. 231 (1904); *Moreno v. Heirs of Bahr,* 3 P.R.R. 148 (1903).

In contrast, the statute of limitations on a note payable on demand accrues on the day it is executed and is extinguished three years later whether or not a demand has been made. *Federal Deposit Ins. Corp. v. Cardona,* 723 F.2d 132, 133 (1st Cir.1983) (applying Puerto Rico's statute of limitations); *In re Las Colinas, Inc.,* 294 F.Supp. 582, 595 (D.P.R.1968), *vacated on other grounds and remanded for further proceedings,* 426 F.2d 1005 (1st Cir.1970), *affd.,* 453 F.2d 911 (1st Cir.1971), *cert. denied,* 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed. 2d 797 (1972); *Heirs of Rodriguez v. Virella,* 62 P.R.R. 625, 626 (1943); *Alvarez v. National City Bank of New York,* 46 P.R. R. 82, 84–85 (1934).

■ In the case at hand, although the face of the notes state that they are due on demand, the vast majority of the notes were conditioned upon the express terms of their respective loan agreements. "A maker of a note may burden it with any conditions contained in any previous agreement by simply adding the recital as to consideration 'and subject to the terms and conditions of (the) contract'." *Herminio Madera, Inc. v. Madera,* 49 P.R.R. 159, 171 (1935), *aff'd.,* 88 F.2d 855 (1st Cir.1937). A careful examination must be taken of all the notes to determine if they are due on demand, fixed on a day certain, and/or subject to previous loan agreements.

In reviewing the loan agreements, we find that the advances disbursed under the 1972 agreements had a due date of April 5, 1975. Specifically, the June 8, 1972 agreement states that,

All the amounts owed to (Banco Crédito) under this new loan, shall be paid within the same term listed in the Loan Agreement, to wit, shall be totally paid within the maximum term of four (4) years which shall start on April 5, 1971 and therefore, shall be due on April 5, 1975.

(Plaintiff's Trial Exhibit 6, para. 8(e).) The advance made under the December 13, 1972 agreement also states that,

All the amounts owed to (Banco Crédito) under this special loan, shall be paid within a term that will become due on April 5, 1975.

In case of default in payment, the notes advanced under the December 13, 1972 agreement would become due on demand. (Plaintiff's Trial Exhibit 7 para. 3 IV.) Since both the 1972 agreements fixed April 5, 1975 as the day certain on which the obligations expressed in the notes would be demandable, Banco Crédito could not demand payment beforehand. Accordingly, the statute of limitations began to run on these notes on April 5, 1975 and would have prescribed three years later, on April 5, 1978. However, five days before the expiration of the Puerto Rico statute of limitations, FDIC acquired the notes. By so doing, FDIC acquired an additional six years under the federal statute of limitations to commence an action on these notes, or until March 31, 1984. 28 U.S.C. sect. 2415(a); *Kinson,* No. 87–3705, slip op. (June 6, 1988); *Roldan Fonseca,* 795 F.2d at 1108; *Cardona,* 723 F.2d at 134; *Bird,* 516 F.Supp. at 650. Therefore, FDIC's claim on the advances disbursed under the 1972 agreements was timely filed on September 27, 1979.

■ Unlike the notes issued under the 1972 agreements, we find the notes issued under the 1971 and 1974 agreements were due on demand. The 1971 agreement states that "the outstanding loans ... and the additional loan to be granted are pay-

able on demand . . ." (Exhibit 4, para. 3 of plaintiff's opposition brief to motion for summary judgment by Suro, Amadeo and Consolidated.) The 1974 agreement explicitly states that,

> all the loans performed under this Contract, shall be due on demand and it will be so established on the notes supporting said disbursements. Notwithstanding the above, the Bank states that it is aware, that this new loan shall be used to continue the performance of the projects already listed above and that the Bank shall not demand payment, as long as it is shown to the Bank in satisfactory manner that the performance is proceeding with diligence, in the conservation and sale of the units and that compliance is given to all the agreements and conditions of the different contracts signed between (Banco, Altomar, Acro, Apriore) Consolidated and the Guarantors.

(Plaintiff's Trial Exhibit 8, para. 3 IV.)

Because no date of payment is set, the three year statute of limitations for demand notes begins when the notes are issued.

FDIC acquired the Consolidated notes on March 31, 1978. The statute of limitations could not have expired therefore, on any demand notes that were issued after March 31, 1975, three years before FDIC acquired the claim. On the other hand, the statutes of limitations would have expired on any demand notes issued before March 31, 1975 unless there was an acknowledgment of the debts.

■ There are 29 notes which are not subscribed to any agreement. These notes, however, specify on their face that they are due on demand. These notes were issued sometime after March 31, 1975. Therefore, FDIC acquired a valid claim as to these notes.

Under the 1971 agreement, 10 demand notes were issued, only one of which was issued after March 31, 1975, and is clearly still demandable. Since the other 9 were issued before March 31, 1975, the three year period has run on them, and they are not now demandable on their face. Of the 163 demand notes issued under the 1974 agreement, 149 were issued after March 31, 1975. These too are are clearly demandable. In sum, the three-year statute of limitations has clearly not expired as to 150 notes of the 173 notes issued under the 1971 and 1974 agreements. The remaining 23 notes, issued before March 31, 1975 are time barred, unless there was an interruption of the prescription period as shown below.

## B. INTERRUPTION OF THE PRESCRIPTION

The next issue to consider is whether or not FDIC's claim as to the 23 demand notes that were issued more than three years before FDIC purchased them, survives the statute of limitations bar against Suro, a co-surety who is jointly liable with the debtors. It has already been determined that Consolidated, a co-joint debtor acknowledged the debts. *Consolidated Mortg.*, 805 F.2d at 20. The crucial question is how does the debtor's acknowledgment of the debts affect the liability of Suro, a joint surety ("fiador solidario").[2]

The Puerto Rico Civil Code embodies two articles that deal with the effect of interruption in contractual relationships. First, Article 1875, 31 L.P.R.A. sect. 5305 (1968), provides:

> Interruption of the prescription against the principal debtor by suit for debt shall also lie against his surety; but that arising from extrajudicial claims of the credi-

---

**2.** In the civil law, an obligation that is *"solidaria"* is one in which there is individual and collective responsibility among the debtors. *See* 19 L.P.R.A. sections 18, 119. An obligation that is *"mancomunada"* is one where two or more debtors share in the responsibility of that obligation. A "fiador solidario" is often translated as "joint surety." *Nones v. Carr,* 98 P.R.R. 230 (1970); *Consolidated,* 805 F.2d 14. We use the words "solidario" and "joint" interchangeably in this Opinion and Order. The reader should be aware that obligations that are "joint," "several," and "joint and several" under the Common Law are not exactly equivalent to the legal concepts of *"mancomunada"* and *"solidaria"* under the Civil Law. *See* G. Velázquez, *Las Obligaciones: Según el Derecho Puertorriqueño,* 294 (1964); *Rosario v. Sandoval,* 60 P.R.R. 401, 403 (1942).

tor or private acknowledgments of the debtor shall not prejudice said surety. Second, Article 1874, 31 L.P.R.A. sect. 5304 (1968) provides:

> Interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors.

We first turn to the issue as to whether or not Consolidated's acknowledgment was public or *private* before addressing the issue of whether or not Suro personally acknowledged the debts under Article 1875.

The first phase of Article 1875 states the general rule that "interruption of the prescription against the principal debtor by a suit for debt shall lie against the surety." As an exception to this general rule, the article provides that the surety shall not be prejudiced by *private* acknowledgments. R. Uria, *Derecho Mercantil*, 680 (1962); Martínez Val, *Derecho Mercantil*, 418 (1979); L. Diez Picazó, *La Prescripción en el Código Civil*, 148 (1964). The policy behind this exception is to protect the surety from fraud.[3] According to the Spanish commentator Quintus Mucius Scaevola, without the requirement of public acknowledgment by the principal debtor, a creditor and a principal debtor may secretly agree to revive a debt that is already time barred in order that the creditor may recover from the surety. 32–II Scaevola, *Código Civil* 1014 (1965). Spanish commentators agree that this concern necessitates that acts of interruption must be explicitly clear, authentic and effective in order to prejudice the surety. *Id.* at 1015; Manresa, *supra*, at 1251; Luis Diez Picazó, *supra* at 148.[4] For instance, acts of interruption cannot be antedated. The acts of interruption must also appear formal and solemn in order to avoid any appearance of collusion between a debtor and a creditor. *Id.*

The Puerto Rico Supreme Court has expressed its view on the various forms of public acknowledgments which may validly interrupt the statute of limitations. In *Vazquez v. Freiria*, 27 P.R.R. 764 (1919),

the court found that there was sufficient acknowledgment when certain attempts to pay the debt plus the transfer of the note with an endorsement by the payee as surety and principal debtors were made. In another case, the contract required the debtors to pay interest when there was an express or tacit extension. The court determined that an extension of the obligation occurred when debtors made certain interest payments. *Velez v. Velez*, 40 P.R.R. 55 (1929). The court later found that the debtor revived a debt each time a creditor demanded payment. *Puerto Rico Fertilizer Co. v. Diaz*, 43 P.R.R. 138 (1932). Subsequently, the Puerto Rico Supreme Court stated, in *Widow of Carlo v. Toro*, 99 P.R.R. 196 (1970), that a debtor's assumption of a mortgage debt in a public deed was sufficient evidence of acknowledgment. In *Diaz De Diana v. A.I.A.S. Ins. Co.*, 110 P.R.R. 471 (1980), the court stated that the internal memos or correspondence between an insurance adjuster and the insurance company or between the insurer and the insured did not constitute acknowledgment. The court reasoned that acknowledgment which interrupts the statute of limitations must be made to the creditor with the clear and specific intent of acknowledging the debt. The court also clarified the holding in *Widow of Carlo v. Toro*, 99 P.R.R. 196, by stating that a recording of a deed is a formal public act which gives sufficient notice to any interested party with a claim in the property recorded. *Diaz De Diana*, 110 P.R.R. at 614–616.

The First Circuit, in *Cardona*, 723 F.2d 132, held that according to Puerto Rico law, the listing of a debt as a liability on an estate tax return was sufficient acknowledgment of the debt. A written acknowledgment is effective when it is communicated by the creditor or to a third party with the intent that the third party communicate it to the creditor. The listing of a debt on an estate tax return infers the

---

3. For the policy behind Article 1975, *see* 32–II Scaevola, *Código Civil* 1013–20 (1965); D.J. Manresa, *Código Civil Español* 1232–53 (1973).

4. In contrast, an acknowledgment of a debt by a debtor may be express or tacit since collusion is impossible. G. Velázquez, *Las Obligaciones*, Sect. 471 at 468–69 (1964).

intent by the estate to pay off the debt. The First Circuit reasoned that "any other interpretation would leave the estate's executor vulnerable to a charge of tax evasion." *Id.* at 138.

■ FDIC contends that: 1) the filing of the financial statements with the Puerto Rico State Department and/or 2) the accounting records of Consolidated constitutes sufficient public acknowledgment as well as personal acknowledgment by Suro. Whether these circumstances are sufficient acknowledgment appears to be a close question. *Consolidated Mortg.*, 805 F.2d at 19. At first glance of the evidence submitted at the September 1, 1987 evidentiary hearing, it appeared that there was no direct evidence of public acknowledgment by Consolidated or personal knowledge by Suro (Tr. 52). On further examination of the exhibits we find, however, that Consolidated publicly acknowledged the debts and that Suro personally acknowledged the debts.

The filing of a required financial statement of a corporate debtor with the Commonwealth State Department that reports the time barred debt in its entirety is much more analogous to the recording of a mortgage debt in the Commonwealth Registry of Property in the Puerto Rico Supreme Court case of *Widow of Carlo*, 99 P.R.R. 196.[5]

Debtor's annual report for the year ending July 31, 1976 was filed pursuant to Puerto Rico General Corporation Law, 14 L.P.R.A. Sect. 2301. (Plaintiff's September 1st, 1987 Hearing Exhibit 4.) This report, along with other reports that are filed at the State Department, is an authentic and an official document, open to inspection "by those persons interested in the financial standing of that corporation." *Compañia Popular De Transporte, Inc. v. Gallardo*, 54 P.R.R. 551 (1939). Both the recording of a mortgage debt and filing of a financial statement with the Puerto Rico State Department, pursuant to law, are

public documents which provide sufficient notice to all interested parties.

Moreover, the issue of fraud between the principal debtor and creditor is not implicated in this case. Obviously, there can be no collusion when the joint surety and the corporate officer of the principal debtor are one. and the same person. Suro, as joint surety and President of Consolidated, would not conspire with Banco Crédito to hold himself liable. Accordingly, the efficacy of the corporate financial report constitutes public acknowledgment. Therefore, pursuant to Article 1875 of the Puerto Rico Civil Code Suro is prejudiced by Consolidated's public acknowledgment of the debts and cannot assert the limitations defense under the circumstances of this case.

■ The accounting records of a principal debtor and its request for further advances cannot, however, be considered an effective public acknowledgment to bind the surety since they tend to be private in nature and can be used to defraud the surety.

■ Yet, in this particular case, they evidence personal "knowledge" by Suro. Suro was president and director of Consolidated from 1971 to 1980. (Plaintiff's September 1st, 1987 Hearing Exhibit 3.) As top officer of said corporation, he took part in its day-to-day operations. More importantly, he regularly and routinely signed notes of Consolidated for delivery to the bank where he acknowledged and subscribed before a notary public. Suro also signed, in his corporate capacity, various letters after March 31, 1976 to Banco Crédito involving the completion of the construction projects. (Plaintiff's September 1st, 1987 Hearing Exhibits 8, 11, 12, and 14.) Suro, as president for Consolidated, signed the financial statement for 1977 which disclosed the indebtedness. Suro was superior officer to Jaime José Pérez, who testified that he had the responsibility of reviewing and approving the request for advances submitted to the bank. Suro, therefore, cannot claim ignorance of Con-

---

**5.** *Accord, Clarkson Co. Ltd. v. Shaheen*, 533 F.Supp. 905 (S.D.N.Y.1982) (the acknowledgement of a debt in a company's annual report has been held clear recognition of the debt and sufficient to revive the statute of limitations).

solidated's acknowledgment because he was a willingly participant. Although there is a distinction between knowledge and acknowledgment, the latter means to assume responsibility for one's acts. *Black's Law Dictionary* 21 (5th ed. 1979). Suro knew by requesting further advances in his official capacity for Consolidated after the expiration of the limitations period he was in a sense renewing as a joint surety his obligation to guarantee Consolidated's debt. Consolidated's acknowledgment of the debt was not done behind Suro's back. Therefore, there is sufficient evidence to conclude that Suro personally acknowledged the debts.

■ Another reason for finding against Suro is that a surety who is jointly liable with the debtor must equally bear the consequences of the debtor's acknowledgment under Article 1874. There is support in the Spanish commentaries, the Puerto Rico Civil Code and case law for the conclusion that a joint surety loses his Article 1875 right to assert the statute of limitations defense where the debtor has acknowledged the debt.

It is important to understand that the Puerto Rico Civil Code makes distinctions among a joint debtor ("deudor solidario"), a mere surety ("fiador") and a joint surety or surety *in solidum* ("fiador solidario"). When there are several creditors and debtors involved in a single obligation, the debt is divided into equal portions, the creditor has no right to ask that each debtor be adjudged jointly and severally unless there is an express stipulation of joint liability or solidarity. Art. 1090 of P.R. Civil Code, 31 L.P.R.A. sect. 3101 (1930). In joint obligations, a creditor has the option to proceed against any of the joint debtors for the entire amount of the debt or all of them simultaneously. Art. 1097, P.R. Civil Code,

31 L.P.R.A. sect. 3108 (1968); *Consolidated Mtg.*, 805 F.2d at 21.

A security or a surety "binds himself to pay or perform for a third person in case the latter should fail to do so." Art. 1721 of P.R. Civil Code, 31 L.P.R.A. sect. 4871 (1930). A surety who binds himself jointly with the principal debtor loses the right of exhaustion of remedies of the debtor's property or to the return of an execution unsatisfied. Art. 1730 of P.R. Civil Code, 31 L.P.R.A. sect. 4892 (1930); *Carr v. Nones*, 98 P.R.R. 230 (1970); *Colon v. Porto Rican & American Ins. Co.*, 63 P.R.R. 332 (1944); *Succrs. of P. Millon & Co. v. Caamaño*, 38 P.R.R. 174, 179–80 (1928); 4 J. Castán, *Derecho Civil Español, Común y Foral* 684–85 (9th Ed.1961); XII Manresa, *supra* at 178 (5th ed. 1951). In other words, a mere surety cannot be sued for collection until the creditor has first tried to collect from the debtor even though the surety guarantees the debt.

In contrast, a joint surety may be sued for collection in case of default even before the creditor has sued the principal debtor— right of discussion ("derecho de excusión").[6] In a sense, the joint surety is a joint debtor with respect to the creditor. While the joint surety preserves his characteristics of surety *vis-a-vis* the debtor, the joint surety loses his right of discussion vis-a-vis the principal creditor. *Nones*, 98 P.R.R. 230. It is apparent that in joint obligations the creditor is in a better position because he can recover a debt in full from a co-debtor or a co-surety.

With regard to the statute of limitations defense, joint obligations among debtors or sureties require that all should be treated equally when one of them tolls the statute of limitations.[7] In other words, all joint debtors or joint sureties must suffer the consequences imposed by the acknowledg-

---

6. The Spanish word *excusión* derives from the latin word *excussio*. Under civil law, *excussio* is defined as a diligent prosecution of a remedy against a debtor or the exhaustion of a remedy against a principal debtor prior to resorting to his sureties. The literal translation of *excussio* is discussion. *Black's Law Dictionary* 509 (5th ed. 1979).

7. Although the Puerto Rico Civil Code is silent on the issue of the liability of a joint surety when the principal debtor has acknowledged the debts, it is interesting to note that the Louisiana Civil Code has explicitly resolved the issue. Acknowledgment by the principal debtor interrupts the prescription against the surety under Article 3553 of the Louisiana Civil Code.

ment of a debt by one joint debtor or joint surety.

The Spanish Commentator Luis Diez Picazó, in discussing the scope of Article 1975 of the Spanish Civil Code (the equivalent Article 1875 of P.R. Civil Code) explicitly states that when a surety is jointly liable with the principal debtor, the relationship is governed by Article 1974 of the Spanish Civil Code (the equivalent Article 1874 of the P.R. Civil Code). Said Article applies to all relationships involving joint obligations (i.e. joint debtors, joint creditors and joint sureties). In contrast, Article 1975 of the Spanish Civil Code, (Article 1875 of the P.R. Civil Code) finds application extensively to the case of the mere surety or the subsurety ("subfiador"). Picazó, *supra,* at 150–51. Manresa explains the reason for making an acknowledgment of a debtor affect another joint debtor is that they are jointly liable and they bear the consequences equally. Manresa further explains that the reason that the private acknowledgment of a debtor does not affect the surety under Article 1975 of the Spanish Civil Code (or Article 1875) is that surety's obligation is a supplemental or auxiliary ("subsidiaria") one, and to avoid collusion between debtor and creditor prejudicial to the interest of the surety. Manresa, *supra,* at 1249, 1251.[8]

This Court, in applying the Puerto Rico Civil Code, has found that when a surety is bound *in solidum* with the principal debtor, the surety is treated as a principal debtor, not as a subsidiary debtor. *McDonough Construction Co. of Fla. v. Maryland Cas. Co.,* 215 F.Supp. 488 (D.P.R. 1961). In *Mansiones De Park Gardens, Inc. v. Scotiabank,* 114 D.P.R. 513, 520 (1983), the Puerto Rico Supreme Court has held that a party, who jointly and severally, guarantees a corporation's debt cannot assert usury as a defense since such a defense by statute is not available to the corporation. Similarly, a surety who is jointly and severally liable with the debtor cannot assert the statute of limitations as a defense when the debtor has acknowledged the debt. Both the debtor and the joint surety must be treated equally since their obligations are interwined.

In conclusion, FDIC's claim for collection of money was timely filed because the Puerto Rico three-year statute of limitations had not expired at the time that FDIC acquired the majority of the notes. As to those demand notes issued before March 31, 1975 there was an interruption of the prescription period. Suro's liability is predicated under both Article 1875 and Article 1874 of the Puerto Rico Civil Code. Under Article 1875, Consolidated publicly acknowledged the debts by filing the financial statement with the Puerto Rico State Department. This constitutes sufficient notice to hold Suro to the detrimental consequences of Consolidated's actions. He also personally acknowledged the debts. In addition, the rule applicable to joint sureties is Article 1874 of the Civil Code, which provides that interruption of prescription of actions in joint obligations equally benefits or prejudices all the co-parties. Suro, as a joint surety, is bound by the private and/or public acknowledgment of Consolidated, the principal debtor.

WHEREFORE, the Clerk is hereby ordered to enter judgment in favor of the Federal Deposit Insurance Corporation against José A. Suro as a joint surety in the amount of $9,810,925.20, plus interest and costs.

IT IS SO ORDERED.

---

**8.** It should be noted that Picazó disagrees with Manresa's rationale for the rule requiring that joint sureties be shielded from private acknowledgments of debtors. Picazó states that it is futile to explain such a rule. Nevertheless, Picazó states that Article 1975 of the Spanish Civil Code is the general rule applied to joint sureties. He further adds that the worst thing that can happen is that the joint surety must pay the debt that he has obligated to pay in the first instance. Picazó, *supra,* at 148–152.