**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff, Appellee,**

v.

**CONSOLIDATED MORTGAGE AND FINANCE CORPORATION, et al., Defendants, Appellants.**

No. 85–1822.

United States Court of Appeals, First Circuit.

Heard June 6, 1986.

Decided Nov. 10, 1986.

Jose A. Suro, Santurce, P.R., for defendants, appellants.

Gabriel Hernandez Rivera with whom Feldstein, Gelpi, Hernandez & Gotay, Old San Juan, P.R., was on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and KEETON,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from a district court judgment holding defendants Consolidated Mortgage and Finance Corporation ("Consolidated"), Urbanizadora Altomar, Inc. ("Altomar"), Urbanizadora Acro, Inc. ("Acro"), Urbanizadora Apriore, Inc. ("Apriore"), Jose A. Suro ("Suro"), and Antonio Amadeo ("Amadeo"), jointly and severally liable to the Federal Deposit Insurance Corporation ("FDIC") under certain promissory notes and letters of guaranty. The notes and letters were executed as part of several loan agreements entered into between defendants and Banco Credito y Ahorro Ponceno ("Banco Credito" or the "Bank"). Consolidated executed the notes and Suro and Amadeo executed letters of guaranty making them jointly and severally liable to the Bank for obligations under the notes. Consolidated received the proceeds from the loans and in turn gave them to the defendant corporations involved in the development of real estate (Altomar, Acro, and Apriore), reserving the right to obtain a commission from this transaction.[1] The FDIC acquired the notes and letters of

---

* Of the District of Massachusetts, sitting by designation.

1. There was evidence below that, at some point, the bank loan proceeds went directly to the developers and that Consolidated, while continuing to sign the notes, may have received no commissions.

guaranty upon becoming the receiver of Banco Credito when the latter failed. The FDIC in its corporate capacity purchased the letters and notes from FDIC-receiver on March 31, 1978, and filed to collect in the district court in 1979. Directing a verdict for the FDIC, the court found defendants liable for $9,810,925.30. Consolidated and Suro alone have appealed.

## I.

■ Defendants-appellants contend that the district court erred in granting FDIC's motion for leave to amend its complaint. This argument has no merit. Rule 15 of the Federal Rules of Civil Procedure requires that motions to amend be liberally granted in the absence of undue prejudice to the opposing party. The amended complaint merely inserted the amount sought by the FDIC; no new theories or causes of action were added. Defendants did not ask for further discovery, or request additional time to prepare for trial. Thus, we do not find that undue prejudice attached to defendants by reason of the leave to amend.

## II.

■ Consolidated argues that the district court erred in rejecting its defense of lack of consideration. It argues that the proceeds of the loans at issue were advanced directly by the Bank to parties (*i.e.*, Altomar, Acro and Apriore, named along with Consolidated as "debtors" in the loan agreements) other than Consolidated itself, although the latter executed the notes. We do not find this argument persuasive because even if Consolidated did not benefit from the proceeds itself, it would be considered as a guarantor of the loans, or as a surety jointly with those other debtors who benefited from the loans, under *Carr v. Nones*, 98 P.R.R. 230 (1970). In that case the Supreme Court of Puerto Rico ruled that one who binds himself as debtor to a loan without benefiting from it is nonetheless liable as a joint surety.[2]

## III.

Appellants argue that the district court erred in not allowing the introduction of evidence that would have proven that FDIC's negligence was in part responsible for the losses because it mismanaged the real estate projects for which the loans were being used.

■ The loan agreements do provide that every disbursement the debtors make in relation to the projects will be controlled by the Bank. The debtors had to submit evidence to the Bank of all payments made to suppliers, contractors, subcontractors, etc., and of the contracts entered into relating to the projects. Likewise, the plats of construction and the viability studies for the construction had to be submitted to the Bank for its approval, as well as any deviation from them in the execution of the projects.

But even assuming this shows the Bank, and later the FDIC, was "managing" the projects, appellants have offered nothing tending to show that either the Bank or the FDIC was negligent in what it did. They point to two documents that, according to them, support their argument. We have examined them and find nothing in that respect. Appellants further argue that they have other documents that the district court did not allow to be introduced as evidence, that sustain their contention. However, appellants failed to make an offer of proof showing the contents and materiality of these alleged documents and, therefore, did not place the court in a situation to evaluate the validity of this counterclaim. Fed.R.Evid. 103(a)(2). We need not, therefore, address the issue of whether the counterclaim was separately barred by 12 U.S.C. § 1823(e) (1983). *FDIC v. La Rambla Shopping Center, Inc.*, 791 F.2d 215 (1st Cir.1986).

**2.** *Compare Mansiones de Park Gardens, Inc. v. Scotiabank*, 114 D.P.R. 513, 519 (1983), where the court said the fact that a joint debtor receives no personal benefits from the loan does *not* make him a mere surety. Under that case, Consolidated would be liable as a joint debtor even if it did not itself benefit from the loan.

## IV.

Appellants argue the district court erred in failing to apply the shorter three-year statute of limitations of Puerto Rico's Commerce Code to the loans in question. Art. 946 of the Commerce Code of Puerto Rico, P.R.Laws Ann. tit. 10, § 1908 (1976). In order for the limitations period of the Commerce Code to apply, the loans must be of a commercial nature. To establish this, it is necessary that one of the parties to the loan be a merchant and that the loan proceeds have been devoted to commercial transactions. Art. 229 of the Commerce Code of Puerto Rico, P.R.Laws Ann. tit. 10, § 1651 (1976); *Pescaderia Rosas v. Lozada*, 85 J.T.S 52 (June 28, 1985). If the loans do not meet both of these requirements, the 15–year statute of limitations of Article 1864 of the Civil Code of Puerto Rico applies. P.R.Laws Ann. tit. 31, § 5294 (1968). Here, while appellants themselves presented little information on the subject, the undisputed facts of record all point unequivocally to the commercial nature of these loans.

Appellants initially moved for summary judgment on the ground the complaint was time-barred. The district court denied the motion after first holding an evidentiary hearing addressed to the statute of limitations issue. In an opinion following the hearing, the court concluded that,

(1) Jose Suro's liability as guarantor of the loans was not time-barred because the letters of guaranty which he executed provided that they would remain in force until the Bank was notified in writing of their revocation (and, implicitly, there was no evidence of such notification).

(2) Defendants failed to carry their burden of proving that the loans were of a commercial nature.

(3) It was unnecessary for the court to decide whether or not the loans were commercial, either because some of the notes were executed [3] less than three years before the FDIC's acquisition of Banco Credito's claim [4] or because they were later acknowledged by the debtors.

---

**3.** The parties to this case agreed at oral argument—and in light of that agreement we assume for present purposes—that in Puerto Rico the statute of limitations on a note payable on demand begins to run the day it is executed and that a claim on the note may thus be barred after three years even though no demand was ever made. *Cf. Moreno v. Heirs of Bahr*, 3 P.R.R. 148 (1903); *Kuinlam v. Melendez*, 6 P.R.R. 231 (1904); *Alvarez v. National City Bank of New York*, 46 P.R.R. 82, 84–85 (1934); *Heirs of Rodriguez v. Virella*, 62 P.R.R. 625 (1943); *FDIC v. Cardona*, 723 F.2d 132, 133 (1st Cir. 1983); *In re Las Colinas, Inc.*, 294 F.Supp. 582, 595 (D.P.R.1968), *vacated on other grounds and remanded for further proceedings*, 426 F.2d 1005 (1st Cir.1970), *aff'd*, 453 F.2d 911 (1st Cir.1971), *cert. denied*, 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972). *See,* although not specifically applicable in Puerto Rico, Section 3–122 of the Uniform Commercial Code (cause of action on a demand note accrues upon its date or the date of issue).

While we thus accept the parties' agreement for present purposes, we observe that the notes here were issued in connection with loan agreements. It may be that the terms of these instruments condition the times both that the notes became due and the limitations period began to run. Section 3–119 of the Uniform Commercial Code states the well-established principle (which may also apply in Puerto Rico although the UCC has not been adopted there), that "[a]s between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction." *See, e.g., Ligran, Inc. v. Medlawtel, Inc.,* 86 N.J. 583, 432 A.2d 502 (N.J.1981) (a lease and a promissory note are to be read together as instruments executed as a part of the same transaction for purposes of determining when the note was intended to come due.) No consideration seems to have been given by the parties below to the interrelation between the notes and the other documents and we do not undertake to determine its possible relevance here on the confused record now before us.

Another principle of possible application here was stated in a 1980 case from this circuit, construing the law of New Hampshire (although we know of no similar Puerto Rico authorities). We ruled in *Guild v. Meredith Village Savings Bank,* 639 F.2d 25 (1st Cir.1980), that the payment of interest on an interest-bearing demand note tolled the statute of limitations which, according to section 3–122 of the UCC had begun to run when the note was executed.

**4.** If the applicable local statute of limitations has not yet cut off a bank's claim when the FDIC acquires the claim, then the FDIC may sue *at least within the period remaining under the local limitations statute* and, possibly, within six

At trial appellants sought to argue the commercial nature of the loans, but the district court did not allow them to, stating that in denying summary judgment the court had concluded that the debtors were not merchants, and that was the law of the case. However, the undisputed evidence of record precludes any conclusion other than that the loans were commercial.

In *FDIC v. Barrera*, 595 F.Supp. 894, 899 (D.P.R.1984), the United States District Court for the District of Puerto Rico held that it was sufficient to fulfill the requirements of Article 229 of the Commerce Code of Puerto Rico, that a corporation was devoted to the business of developing or building for others who, in turn, sold or leased the housing units to the public; and that the funds from the loan executed by the corporation were used exclusively in connection with said business. We believe the court in *Barrera* correctly stated the law of Puerto Rico in this regard.

■ The situation here is basically like that described in *Barrera*. The corporations which were parties to these loan agreements and notes were all developers and business entities involved in the construction and mortgage businesses. Consolidated's borrowings from the Bank were used to purchase and construct housing projects. Insofar as Consolidated was in the business of lending money for profit, its status as a merchant could also be derived from that fact. Martinez Val, *Derecho Mercantil*, at 422–23 (1979); *Pescaderia Rosas v. Lozada*, 85 J.T.S. 52 (June 28, 1985). Accordingly, we hold that the three-year statute of limitations fixed by Article 946 of the Commerce Code applies.

## V.

■ The district court took the view that it made no difference if the Code of Commerce's three-year statute of limitations applied because the defendant corporations repeatedly acknowledged their obligations during the relevant time period, starting the statute to run anew from each acknowledgment. The court indicated that all of the loans as to which the statute of limitations would have run when the FDIC acquired the notes were acknowledged either before or after the acquisition by the FDIC. Different legal standards, however, apply to acknowledgments made before and after acquisition. If the purported acknowledgment took place *after* the FDIC acquired the notes (*e.g.*, assuming the Bank's claim had not by then been cut off by the local statute of limitations, *see* note 4, *supra*), the effect of any alleged acknowledgment would be determined by federal law. *FDIC v. Cardona*, 723 F.2d at 136. *See* 28 U.S.C. § 2415(a) (1983). But if any alleged acknowledgment occurred *before* FDIC's acquisition of the notes, Puerto Rico law alone would determine its sufficiency. Here the critical question is whether the notes were acknowledged under Puerto Rico law so as to keep the Bank's claims alive until the FDIC acquired them.

It is well settled that in all matters under the Commerce Code of Puerto Rico, including the area of statute of limitations or "prescription," the rules of the Civil Code of Puerto Rico are applicable when, as in the present situation, there is no rule in the Commerce Code. Art. 81 of the Commerce Code of Puerto Rico, P.R.Laws Ann. tit. 10, § 1301 (1976); J. Garrigues, *Tratado de Derecho Mercantil*, Tomo III, Vol. I., at 163–168 (1964). For that reason, even though the contracts in the case at bar are of a "commercial" nature, we shall refer to the Civil Code, its commentators, and the cases decided under it.

The Supreme Court of Puerto Rico has in several cases considered which forms of acknowledgments may be valid for the interruption of the statute of limitations. In *Vazquez v. Freiria*, 27 P.R.R. 764 (1919), certain attempts to pay the debt coupled

---

years from acquisition under 28 U.S.C. § 2415 (1983), although the precise application of this latter remains undecided. *FDIC v. Cardona*, 723 F.2d 132, 134 (1st Cir.1983); *FDIC v. Roldan-Fonseca*, 795 F.2d 1102, 1108 (1st Cir.1986). *See*

*FDIC v. Barrera*, 595 F.Supp. 894, 900 (D.P.R. 1984) (the mere fact of acquisition of the claims by FDIC does not revive any claim which is already time-barred by a Puerto Rico statute of limitations).

with the transfer of the note with an endorsement by the payee "as surety and principal obligor" were found to be enough acknowledgment to start the period running again. In *Velez v. Velez,* 40 P.R.R. 55 (1929), the debtors were required to pay interest only in case of an express or implied extension. Because they made certain payments of the interest, the court found this implied an extension of the obligation. In *Puerto Rico Fertilizer Co. v. Diaz,* 43 P.R.R. 138 (1932), the obligor acknowledged the debt to the creditor every time the creditor demanded payment. In *Widow of Carlo v. Toro,* 99 P.R.R. 196 (1970), the court said that the debtor's assumption of a mortgage debt in a deed recorded in the property registry is "sufficient notice of the acknowledgment." Finally in *Diaz de Diana v. A.J.A.S. Insurance Co.,* 110 D.P.R. 47 (1980), internal memoranda or mail between an insurance adjuster and the insurance company, or between the latter and the insured, were not considered effective acknowledgment. The court said the acknowledgment that interrupts the running of the statute of limitations has to be made to the creditor and must be made with the specific intention of acknowledging the subsistence of the debt. Furthermore, it added that an acknowledgment should never be deduced from acts or conduct which indirectly or doubtfully express that intention. It explained the holding in *Widow of Carlo v. Toro,* 99 P.R.R. 196, saying that the recording of the deed in the property registry had certain effects on the acknowledgment found in the deed. Besides the public nature of the registry, the recording of a debt there gives it a presumption of validity and is enough notice for anyone having any claims on property recorded there. P.R. Laws Ann. tit. 30, §§ 2354–2357 (1979).

In *FDIC v. Cardona,* 723 F.2d 132, this court decided that the listing of a debt as a liability on an estate tax return was an effective acknowledgment of that debt under Puerto Rico law. Whether recordings in accounting records and financial state-

ments are sufficiently analogous to the listing of a debt in an estate tax return for the former to constitute an acknowledgment, as the district court concluded, seems a close question.

■ We do not have to decide the latter issue because the district court, following the evidentiary hearing, supportably found that Consolidated had acknowledged the debts through "routinely and regularly" delivering notes to the bank, "numerous and repeated" requests for advances made after March 31, 1975 (three years before plaintiff acquired the notes from the Bank), and by "repeatedly" making partial payments after that date on the total balance owed. These forms of acknowledgment clearly fulfill the requirements of validity set forth by the Supreme Court of Puerto Rico.

We are satisfied, therefore, that the FDIC's claims against Consolidated are not time-barred.

## VI.

Whether the three-year statute of limitations bars the liability of Jose A. Suro, Consolidated's sometime president, who, with others, personally guaranteed the loans jointly with the borrower, Consolidated, is a more difficult issue. In the letters of guaranty, Suro obligated himself to the Bank jointly with other sureties and with the borrower, Consolidated. As we shall discuss, the effect of the statute on Suro's liability turns on a number of issues which require further development of the record in the district court. We therefore vacate the court's judgment against Suro and remand for further consideration of this issue.

If we consider Consolidated to be not a debtor but merely another surety who is jointly liable with others who benefited from the loans, *see* section III, *supra,* it can be argued that the acknowledgment Consolidated made would not, by itself, affect Suro's right to assert the statute of limitations defense under either Art. 1744 [5]

---

**5.** "In the case of the preceding section the co-

sureties may set up against the one who paid,

or Art. 1875 [6] of the Civil Code of Puerto Rico, P.R.Laws Ann. tit. 31, §§ 4932, 5305 (1968). But it has not been decided by the Supreme Court of Puerto Rico whether these articles or whether, instead, Article 1874,[7] applies among sureties jointly liable with one another where one surety has acknowledged the debt. We do not dwell on that question, however, since it would be patently unrealistic to view Consolidated, a signer of the notes and a named borrower in the loan agreements, as other than a debtor in its relationship to Suro.

The guarantees that Suro executed fall under Article 1724 of the Civil Code of Puerto Rico as those "given as a guarantee for future debts, the amount of which is not yet known...." P.R.Laws Ann. tit. 31, § 4874 (1968). Through the letters of guaranty Suro assumed responsibility up to a specified amount for the sums Consolidated borrowed from the Bank.

Suro's liability is subject to the Commerce Code's three-year statute of limitations because the debt he guaranteed is of a commercial nature. Art. 349 of the Commerce Code of Puerto Rico, P.R.Laws Ann. tit. 10, § 1821 (1976); *FDIC v. Barrera*, 595 F.Supp. at 900.

The district court did not address the effect that an acknowledgment of the debt by a debtor (*i.e.*, by Consolidated) has on the liability of a surety who is jointly liable with it. Article 1874 of the Civil Code of Puerto Rico, P.R.Laws Ann. tit. 31, § 5304 (1968), provides in part:

> Interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors.

Article 1875 of the Civil Code of Puerto Rico, P.R.Laws Ann. tit. 31, § 5305 (1968), on the other hand provides:

> Interruption of the prescription against the principal debtor by suit for debt shall also lie against the surety; but that arising from extrajudicial claims of the creditor or private acknowledgments of the debtor shall not prejudice said surety.[8]

The commentators are in agreement that in commercial contracts, the acknowledgments of the debtor do not toll the running of the statute of limitations as applied to the claims against the ordinary surety, at least when the acknowledgments are "private." R. Uria, *Derecho Mercantil*, at 680 (1962); Martinez Val, *Derecho Mercantil*, at 418 (1979). The question before us, however, is whether the acknowledgment of the debtor prevents a surety who is jointly liable with the debtor from asserting the statute of limitations defense. Do the similarities between a joint debtor and such a joint surety warrant that Article 1874 be applied to the latter?

In order to understand this issue we need to establish the differences and similarities between the joint debtor, the surety who is not jointly liable with the debtor or mere "surety," and the surety who is jointly liable with the debtor or "joint surety." (We need not be concerned here with sureties jointly liable with each other but not jointly liable with the debtor, because the letters of guaranty executed by Suro are not subject to being construed as creating that relationship.)

the same exception which would have pertained to the principal debtor against the creditor, and which may not be purely personal on the part of the same debtor."

**6.** "Interruption of the prescription against the principal debtor by suit for debt shall lie against his surety; but that arising from extrajudicial claims of the creditor or private acknowledgments of the debtor shall not prejudice said surety."

**7.** "Interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors."

**8.** Article 1837, P.R.Laws Ann. tit. 31, § 5248 (1968), establishes that "[c]reditors and any other persons interested in validating a prescription may benefit thereby, notwithstanding the express or implied renunciation of the debtor or owner." This article has been interpreted to apply to sureties or guarantors. J. Manresa, *Comentarios al Codigo Civil Espanol*, Vol. XII, at 1048 (1973); *FDIC v. Barrera*, 595 F.Supp. at 902.

■ The joint debtor is subject to collection even before the creditor has tried to collect from another of the debtors. If the joint debtor pays the total amount of the debt, he can only recover from his fellow co-debtors the portion attributable to them, not his portion. Arts. 1097, 1098 of the Civil Code of Puerto Rico, P.R.Laws Ann. tit. 31, §§ 3108–3109 (1968).

The mere surety guarantees the debt but is not subject to collection before the creditor has tried to collect from the debtor(s) first. If he pays any amount to the creditor, he is entitled to recover from the debtor(s) the total amount he paid. Arts. 1729, 1737 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 4891, 4911 (1968).

The joint surety (*i.e.*, a surety jointly liable with the debtor, as here) is subject to collection in case of default even if the creditor has not tried to collect from the principal debtor before suing the surety. But if he pays any amount to the creditor, he is entitled to recover from the debtor(s) the entire amount he paid. Art. 1730 of the Civil Code of Puerto Rico, P.R.Laws Ann. tit. 31, § 4892 (1968); *Carr v. Nones*, 98 P.R.R. 230; J. Puig Brutau, *Fundamentos de Derecho Civil*, Tomo I, Vol. II, at 198 (1976); *FDIC v. Barrera*, 595 F.Supp. at 902.

Under Article 1874, does the fact that the surety is jointly bound cause him to lose his Article 1875 right to assert the statute of limitations defense where the debtor has acknowledged the debt? From the statements of a leading Spanish commentator we could infer that the answer to this question is yes, because, according to him, the reason behind making an acknowledgment of a debtor affect another joint debtor under Article 1874 is that they are jointly liable, so that all should carry the consequences imposed upon one of them. He adds that the reason the debtor's "private acknowledgments" do not affect the surety, under Article 1875, is that the surety's obligation is a "subsidiary" one. 12 J. Manresa, *Comentarios al Codigo Civil Espanol*, at 1249, 1251 (1973). On the other hand, Manresa himself says that aside from the fact that the joint surety has no right to require the creditor to collect from the debtor first, the joint surety conserves all the rights, actions and benefits to which he is entitled as a result of the guaranty. *Id.* at 264–65. *See also* J. Puig Brutau, *Fundamentos de Derecho Civil*, Tomo 1, Vol. II, at 198 (1976). The Supreme Court of Puerto Rico has decided that an individual who, jointly or severally, guarantees a corporation's debt cannot assert usury as a defense when there is a statute that prevents the corporation from asserting that defense. *Mansiones de Park Gardens, Inc. v. Scotiabank*, 114 D.P.R. 513, 520 (1983). But we have found no clear expression that would settle the question before us, and the question was not briefed or argued on appeal. If the resolution of the case is eventually found to depend on it, this is an issue that the district court, on remand, should decide in the first instance, or, if it deems it necessary, should certify to the Supreme Court of Puerto Rico. We leave the choice of option to the district court.

If Article 1875 is found to apply to joint sureties of the type described here, the district court still would have to decide whether the debtor's acknowledgments were mere "private acknowledgments" which had no effect on the joint surety's right to assert his statute of limitations defense, or "public" acknowledgments that prevent him from asserting it. *See* J. Manresa, *Comentarios al Codigo Civil Espanol*, at 1250–51 (1973).

## VII.

■ The district court concluded the following from reading the letters of guaranty:

Furthermore, a cursory reading of the security instruments submitted by defendants, marked Exhibit A, discloses that the instruments expressly provide that they were guarantees of a continuing nature and would remain in force until the Bank had in fact received notice in writing that the guarantor had revoked the guaranty and that no act or

omission of the Bank would impair or reduce the same.

This cannot mean that Suro waived whatever right he would otherwise possess in the future to assert the statute of limitations defense. An attempted waiver of the right to prescription in the future would be contrary to Article 1835 of the Civil Code of Puerto Rico which provides in part,

> Persons with the capacity to alienate may renounce the prescription acquired, but not the right to prescription in the future.

P.R.Laws Ann. tit. 31, § 5246 (1968). *See also FDIC v. Barrera,* 595 F.Supp. at 901–02. What the clause in the letters of guaranty must mean is that, until the guaranty is withdrawn in writing, Suro guarantees the future obligations of Consolidated to the Bank *so long* as any prescriptive right which the law gives Suro does not, in effect, nullify the guaranty. Whether such a bar exists here requires a determination, initially, of various facts not now established: in particular, the dates the three-year statute of limitations commenced to run on the various loans, as well also as whether Suro himself personally engaged in any acts of acknowledgment which would have caused the three-year statute to run again in respect to claims based on Suro's guarantees. The district court on remand may also have to reach, in order to resolve Suro's liability, one or more of the questions in sections VI and VIII herein.

### VIII.

■ Plaintiff alleged the following in Count VII of its complaint:

34. The defendant Consolidated, Altomar, Acro, Apriore and Ampure were all relevant times affiliated through common shareholders, directors and officers.

35. The corporate defendants Consolidated, Altomar, Acro, Apriore and Ampure were alter egos of one another and of the decedent Carlos Prio Socarras, Jose A. Suro, Antonio J. Amadeo, and Lou Gazza, in that separate judicial personalities were disregarded, common facilities of credit, funds, personnel and others were utilized and intermingled, the corporations were capitalized in amounts insufficient for the requirements of their intended respective operations and insufficient for the independent operation and survival of the corporations, and in general all of the aforementioned defendants operated as a single enterprise.

36. As a result of the foregoing, each of the aforementioned defendants is jointly and severally liable for the indebtedness of or damages caused by each other defendant.

The district court made no findings in this respect, but if this were true, then the acknowledgments made by Consolidated affected Suro and, therefore, he cannot raise the statute of limitations defense. In other words, if Consolidated and Suro were one and the same person, the acknowledgments made by Consolidated were, in legal effect, made by Suro and he would be bound by them.

### IX.

In summary, we decide that the contracts at issue in the case at bar are of a commercial nature, and, therefore, the three-year statute of limitations of the Commerce Code of Puerto Rico applies. We also hold that the claims brought against Consolidated are not time-barred because the district court found enough evidence of acknowledgments made by this corporation. But we are unable, as yet, to ascertain Suro's liability as guarantor. We, therefore, remand to the district court for consideration of the following:

(1) Whether the defendants' conduct was such that their separate identities should be disregarded, making the acknowledgments made by one affect all. In such event, the court should enter judgment against Suro.

(2) If the answer to the previous question is no, which notes would be time-barred as to Suro, subject to determination of other questions stated below.

(3) Whether Suro himself acknowledged the debts, before the FDIC acquired the

notes, in a way consistent with the Supreme Court of Puerto Rico's statements as to the validity of the acknowledgments, so as to prevent him from asserting the statute of limitations defense.

(4) If the answer to the previous question is no, whether any of Consolidated's acknowledgments were "public" so as to affect Suro even were Article 1875 of the Civil Code of Puerto Rico applicable to him as a joint surety.

(5) If the answer to the previous question is no, the district court should decide the issue of whether the rule applicable to *joint* sureties is that of Article 1874 or that of Article 1875, or, if it deems it necessary, certify this question to the Supreme Court of Puerto Rico.

*The judgment is affirmed as to Consolidated, and is vacated as to Suro. In respect to Suro, the case is remanded for redetermination in accordance with this opinion of whether or not the three-year statute of limitations bars his liability, entirely or in part.*