**INTERNATIONAL PAPER COMPANY, Plaintiff,**

v.

**APRIL AGRO INDUSTRIES, Corporación de Crédito Agrícola, and Autoridad de Tierras, Defendants.**

**Civ. No. 88-0704 (JP).**

United States District Court,
D. Puerto Rico.

July 30, 1990.

Jaime Brugueras, Esq. Ramírez & Ramírez, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This case arises from a series of deliveries plaintiff made to defendant April Agro Industries, Inc. ("April Agro") in March and April of 1986, based on a $300,000.00 line of credit plaintiff granted to April Agro during that same period of time. After the parties agreed to dismiss several claims, International Paper Company's only remaining cause of action is a claim for breach of an express or implied guarantee with alleged damages in the amount of $296,491.89 against defendant Corporación de Crédito Agrícola ("CCA"). Jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a)(2), all parties being residents of different states, and plaintiff's claim for damages exceeding $10,000.00.

The Court has before it CCA's motion for summary judgment. For the reasons stated below, the defendant's motion is granted as to the issue of express guaranty and denied as to the issue of promissory estoppel.

## I. BACKGROUND

In June of 1985, defendant CCA signed two loan agreements as well as several other documents in which it agreed to guarantee a line of credit from Banco de Ponce to Finca Torres, Inc. and Finca Cortada, Inc., corporations which were administered by April Agro. *See* Pretrial Order dated November 22, 1988, Defendants' Factual Version of Case. Pursuant to the terms of the loan agreements,[1] all proceeds advanced by Banco de Ponce would be used for agricultural purposes, and no proceeds would be advanced unless certain conditions had been met.[2] Generally, the agreement provided that as farming progressed, the proceeds of the loans would be advanced by the bank in amounts to be deter-

---

Edgardo Colón Arrarás, Goldman, Antonetti, Ferralloli, Axtmayer & Hertell, Santurce, P.R., for plaintiff.

1. Defendant has submitted only the "Loan and Pledge Agreement" between Finca Torres, CCA, and Banco de Ponce. We assume that the terms of the agreement between Finca Torres, CCA, and Banco de Ponce are identical except for the principal amount of credit to be granted by the bank.

2. Under the section entitled "Loan Advances," the agreement states that the proceeds of the loan would be advanced in amounts determined by CCA to be then due and that no advances would be made unless:

   (i) each advance shall have been approved and guaranteed, under the Program, by the

mined and approved by CCA. In January of 1986, the loan agreements were amended to provide for additional financing.

According to defendant CCA, disbursements were made in the following manner: April Agro requested credit from its suppliers for products and services related to agricultural projects being developed. CCA claims that only April Agro directly negotiated with these potential suppliers. When a certain supplier granted credit to April Agro, the goods or services of that supplier would be delivered to April Agro. If April Agro then decided to pay for the items from the Banco de Ponce line of credit, which was guaranteed by CCA, it was required to submit the documentation to CCA as provided for in the loan agreement. If CCA approved the payment for the merchandise, it would then authorize Banco de Ponce to issue a check to pay for the specific item or service April Agro had requested.

According to plaintiff, in November of 1985, G.T. Enterprises Inc., the authorized local sales representative of plaintiff, began to establish business contacts with April Agro. Sometime thereafter, officers from International Paper and G.T. Enterprises met with personnel from April Agro and CCA to determine whether credit should be granted to April Agro. In December of 1985, International Paper approached CCA in order to confirm that any sales it would make to April Agro would be paid directly by CCA, pursuant to the loan agreement. *See* Pretrial Order, Plaintiff's Factual Version of Case. Plaintiff claims that as a condition precedent to the grant-

ing of the credit line to April Agro, it demanded a commitment from CCA stating that CCA would pay for April Agro's purchases pursuant to the terms of the loan agreement.

On December 2, 1985, Mr. Francisco de Jesús, President of CCA, sent a letter to Mr. Barto Bover, a representative of G.T. Enterprises, stating that "[d]isbursements for purchases and/or services for April Agro (Finca Torres and Cortada) are part of the Loan Agreement with this company. Therefore any purchase and/or service related to the project, which is needed, will be taken care of following the established norms." *See* Appendix to Defendant's Summary Judgment Motion at 51. Plaintiff asserts that this letter constituted an express guaranty that CCA would pay International Paper directly for any merchandise purchased on credit by April Agro. CCA's refusal to pay for April Agro's purchased merchandise valued at $296,491.89 breaches the contract of guaranty. Alternatively, plaintiff asserts that it relied on representations made by CCA so that it was induced to grant the line of credit to April Agro. Under this theory, plaintiff is entitled to reliance damages.[3]

In January of 1986, the president of April Agro sent a letter to plaintiff which stated that the purchase of cartons from International Paper was included in the Loan Agreement between CCA and April Agro.[4] The letter further explained that in order for purchases to be paid from the Banco de Ponce account, the established norms required that April Agro present to CCA the following: (1) complete documen-

Corporation [CCA]; (ii) the conditions precedent to advances provided for herein have been fully satisfied; and (iii) in no case shall further advances be made after May 1, 1986, except in case the Loan is extended by the Corporation, in which case no further advance shall be made subsequent to April 1, 1987.
The agreement further sets forth nine conditions precedent to the initial advance and additional conditions precedent for subsequent advances, including the requirement that each request be accompanied by certain documents and certificates related to the farm receiving the proceeds. *See* Defendant's Appendix to Summary Judgment Motion, Exhibit 1, Loan and Pledge Agreement at 2–3.

3. Although plaintiff does not specifically plead promissory estoppel, we broadly construe its complaint, which states that because it relied on CCA's representations, International granted to April Agro a credit line. *See* Complaint at 2, paragraph 6; Rule 8(f) of the Federal Rules of Civil Procedure ("All pleadings shall be so construed as to do substantial justice.").

4. Apparently, the purchase of such cartons was within the category of purchases authorized by the loan agreement as the parties have stipulated that "cartons and sacks" is the "line item" for payments to the plaintiff. *See* August 25, 1988 Order at 2.

tation on approved check requisition, approved bill (invoice), approved purchase order, and approved receiving documents ("conduce"); (2) present "certification" of the "Cash Flow situation" thoroughly revised and approved by CCA. The letter then stated that according to the established norms that had been described, April Agro expected a credit line of $300,000.00. *See* Appendix to Defendant's Summary Judgment Motion at 51A.

During March and April of 1986, plaintiff granted the $300,000.00 line of credit to April Agro. The credit was to be paid in sixty days. During that same time period, the plaintiff delivered to April Agro goods valued at $296,491.89. According to the parties' Pretrial Statement of Uncontested Facts, plaintiff was paid $40,150.30 on April 3, 1986, and $49,106.72 on April 15, 1986, for deliveries it had made to April Agro even though the "carton and sacks line item" had been exhausted by December 1985.

In June of 1986, the April Agro complex closed down, and all of its assets were transferred to CCA pursuant to an agreement between April Agro and CCA. By the time this transaction had occurred, the Internal Revenue Service had already filed several notices of tax liens against April Agro. As of April 29, 1986, these tax liens totaled $587,890.95. Finally, in 1988, a judgment was entered in this District which granted the IRS a first priority right over all monies recovered by CCA from the collection of proceeds from April Agro's accounts receivable.

## II. SUMMARY JUDGMENT—THE LEGAL STANDARD

A motion for summary judgment is appropriately granted when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

A "genuine" issue is one that is dispositive and that must be decided at trial. *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990). The issue must be decided at trial because the evidence, when viewed in the light most favorable to the nonmovant, would allow a reasonable juror to resolve the issue in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986); *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). The evidence illuminating the factual controversy cannot be "conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." *Mack*, 871 F.2d at 181. A "material" fact is one which affects the outcome of the case and must be resolved before consideration of related legal issues. *FDIC v. Municipality of Ponce*, at 742.

Therefore, in a summary judgment motion, the burden is on the moving party to demonstrate "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2254, 91 L.Ed.2d 265 (1986). The nonmovant then bears the burden of establishing the existence of a genuine material issue. *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). However, the nonmovant may not rest upon mere allegations or denial of the pleadings; it must respond, by affidavits or other supporting evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

Because this is a diversity action, we apply the law of Puerto Rico in order to determine whether plaintiff is able to maintain a cause of action under either an express guaranty or promissory estoppel theory of recovery. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## III. GUARANTIES UNDER PUERTO RICO LAW

Plaintiff asserts that defendant's December 2, 1985 letter sent from Mr. Francisco

de Jesús to Mr. Barto Bover was an express guaranty in which CCA agreed to pay directly to International Paper all debts incurred by April Agro through the line of credit International had granted it. Although neither party cites to any Puerto Rican laws or cases discussing the requirements for the creation of an express guaranty, after a thorough review of the relevant laws of Puerto Rico, we conclude that the December 2, 1985 letter was insufficient to create an express guaranty from CCA to International Paper.

■ According to Civil Code Article 1721, 31 L.P.R.A. § 4871, a guaranty or surety relationship occurs when "a person binds himself to pay or perform for a third person in case the latter should fail to do so."[5] As the Supreme Court of Puerto Rico has explained, three characteristics distinguish a guaranty or suretyship contract ("el contrato de fianza") from other contracts. *Caribe Lumber v. Inter–American Builders,* 101 D.P.R. 458, 466 (1973). First, the underlying obligation of the contract is accessory and subsidiary; it is not a principal or independent obligation, and it derives its juridical existence from the principal obligation which it guarantees. The

guarantor is unconnected to the primary relationship between the debtor and the creditor and only intervenes when the debtor cannot fulfill its obligation to the creditor.[6] *Id.* at 467. *See also* 12 D. Manresa, *Código Civil Español* 158–60 (1951) (hereinafter "Manresa"). Second, the contract of guaranty is unilateral: it can be established without the knowledge of the debtor or the creditor, and the only existing obligation is derived from the guarantor's promise to pay the creditor, even though such payment results in certain obligations the debtor may have to the guarantor. *Caribe Lumber,* 101 D.P.R. at 467; 12 Manresa at 158–69. Finally, the guarantor is a person distinct from the debtor—no debtor can be its own guarantor. *Caribe Lumber,* 101 D.P.R. at 467.

■ Under the laws of Puerto Rico, it is well settled that suretyship is not presumed; it must be express. *National City Bank v. Martinez,* 41 P.R.R. 162, 168 (1930). Section 1726 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 4876, codifies this precept and provides that:

Security is not presumed; it must be express and cannot be extended further than that specified therein.[7]

**5.** *Black's Law Dictionary* defines guaranty as: "[a] collateral agreement for performance of another's undertaking [citation omitted] ... [a] promise to answer for payment of debt or performance of obligation if person liable in first instance fails to make payment or perform obligation [citation omitted] ... [a]n undertaking by one person to be answerable for the payment of some debt, or the due performance of some contract or duty, by another person, who himself remains liable to pay or perform the same." *Black's Law Dictionary* 833 (4th Ed.1968). The distinction between a guarantor and a surety— one who undertakes to pay money or do any other act in the event that the principal fails—is that a surety is usually bound with his principal by the same instrument, executed at the same time, while the contract of the guarantor is his own separate undertaking which the principal does not participate in. *Id.* at 1611. In this Opinion, we use "guaranty" and "surety" interchangeably.

**6.** The laws of Puerto Rico provide for variations from the typical setting in which the guarantor is held secondarily liable for the obligations of the debtor, as provided for in Article 1729 of the Civil Code, 31 L.P.R.A. § 4891. For example, in a joint-debtor ("mancomunada") situation, the

creditor need not collect from any other debtor before seeking payment, and the co-debtor can only recover from his fellow co-debtors the portion attributable to them, not his portion. Articles 1097, 1098 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3108–3109; *FDIC v. Consolidated Mortgage and Finance Corp.,* 805 F.2d 14, 21 (1st Cir.1986). A "fiador solidario" (often translated "joint surety") is jointly liable with the debtor and is subject to collection in the case of default before the creditor has tried to collect from the principal debtor. If the joint surety pays anything to the creditor, he is entitled to full recovery from the debtor for the entire amount paid. Article 1730 of the Civil Code of Puerto Rico, L.P.R.A. § 4892 (1968); *Consolidated Mortgage,* 805 F.2d at 21; *FDIC v. Consolidated Mortgage and Finance Corp., on remand,* 691 F.Supp. 557, 562 n. 2 (D.P.R.1988); *Carr v. Nones,* 98 P.R.R. 230, 232–35 (1970).

**7.** The Supreme Court of Puerto Rico has pointed out that a better translation of this provision is the following: "Suretyship shall not be presumed; it must be express and can not [sic] be extended beyond its specified limits." *National City Bank of New York v. Martinez,* 41 P.R.R. 162, 168 *note (citing F.C. Fisher, *The Civil Code of Spain* 316 (1918)).

Manresa, in construing Article 1827 of the Spanish Civil Code, which is the equivalent of Section 1726 of the Civil Code of Puerto Rico, has noted the following:

> [A]lthough surety is an accessory obligation of the principal obligation, it is none the less [sic] a special obligation distinct from that of the debtor which, therefore, presupposes and requires the intention of the person contracting it to bind himself to comply with what the debtor was under obligation to do in the event of the latter's default ... [such] intention is necessary [so that] without the volition of the surety there is no consent and this is the only element which can give life to the juridical obligation as surety ...
>
> For this reason all codes ... contain the provision that surety is not presumed or that it must be express.
>
> .    .    .    .    .
>
> [S]uch intention may be shown expressly by words which demonstrate the same directly and clearly or in a manner implied from acts which reveal the intention to be bound ...
>
> [W]hat the statute seeks to provide is that surety must be constituted expressly, the intention and will to contract the obligation being shown in a direct and unequivocal manner and excluding, therefore, the tacit form of its expression....

12 Manresa 232–33 (1951) (translation by Supreme Court of Puerto Rico in *Compañía Industrial de Santurce v. Sánchez*, 21 P.R.R. 178, 182–83 (1914) (quoting District Court of San Juan translation)).

■ In the instant case, the December 2, 1985 letter to Barto Bover of G.T. Enterprises, plaintiff's authorized local sales representative, was insufficient to constitute an express guaranty that CCA would pay plaintiff directly for all items and services purchased from plaintiff by April Agro. The letter merely refers to the Finca Torres and Cortada loan agreements, agreements in which CCA *is* an express

guarantor for April Agro and Banco de Ponce is the creditor who granted April Agro a line of credit.[8]

As previously mentioned, the letter states that "[d]isbursements for purchases and/or services for April Agro ... are part of the Loan Agreement with this company. Therefore any purchase and/or service related to the project, which is needed, will be taken care of following the established norms." This letter certainly cannot be viewed as expressly guaranteeing payment to International Paper. The letter fails to use any specific words of guaranty which unilaterally bind CCA to pay International Paper for April Agro's debt. The reference to the loan agreement and disbursements to be made "according to the established norms," is not an "unequivocal, explicit, and categorical" expression which conclusively conveys CCA's obligation to perform a specific duty for International Paper. *Compañía Industrial*, 21 P.R.R. at 181–82 (citation omitted); *see, e.g., Colón v. White Star Bus Line*, 63 D.P.R. 344, 347 (1943) (the guaranty expressly stated: "... White Star Bus Line, Inc., as principal and the Port Rican and American Insurance Co.... as guarantor ["fiadora"] *bind ourselves the first, as principal and the second as guarantor, jointly and severally* ["mancomunadas y solidariamente"] in favor of any person, and we promise to pay up to the sum of $25,000...." (translation ours) (emphasis supplied)); *Solé & Co. v. Pedrosa*, 49 P.R.R. 555, 557 (1936) (the guaranty in dispute read, in relevant part: "I, José Ramos ... hereby constitute myself as *surety, principal debtor and soldary and joint guarantor* of the party of the second party, Pedro V. Pedrosa ... waiving the benefit of discussion and binding myself ... to pay ... precisely the same obligations as are assumed by the principal debtor...." (emphasis added)).

Although plaintiff claims that its representatives were told by officers from both April Agro and CCA that the loan was "in progress [sic]," *see* Pretrial Order, Plain-

---

**8.** In the opening paragraph of the Finca Torres "Loan and Pledge Agreement," CCA is designated as the "originating lender and guarantor."

Appendix to Defendant's Summary Judgment Motion, Exhibit 1 at 1.

tiff's Factual Version, even if such representations were made and could constitute the expressiveness required for a guaranty, the plaintiff has failed to support this claim with any evidence.[9] It has therefore failed to meet its burden of coming forward with specific facts proving that a genuine issue concerning the express guaranty exists. Defendant's Motion for Summary Judgment as to the express guaranty is therefore granted.

## IV. PROMISSORY ESTOPPEL

Plaintiff also claims that based on certain of CCA's representations, it granted the credit line to April Agro. International does not specifically argue "promissory estoppel," but its basic contention is that defendant CCA induced its reliance so that it sold merchandise to April Agro, believing that CCA would pay for the merchandise sold.

■ Although the Civil Code of Puerto Rico does not specifically recognize the doctrine of promissory estoppel, the doctrine has become a part of the law of Puerto Rico through judicial decision. *Santoni v. FDIC*, 677 F.2d 174, 178 (1st Cir.1982); *International General Electric of Puerto Rico v. Concrete Builders of Puerto Rico*, 104 D.P.R. 871, 877 (1976); *Ramírez v. Gautier*, 87 P.R.R. 481, 493–95 & n. 16 (1963).[10] In *Ramírez*, the Supreme Court of Puerto Rico noted that a "unilateral declaration of intention as a source of obligation" not recognized by the Civil Code may nonetheless be given binding force in certain circumstances. 87 P.R.R. at 485–88. According to this doctrine of unilateral declaration of intention ("declaración unilateral de voluntad"), the fulfillment of a simple obligation without the usual elements of a contract such as consideration may become excessively burdensome for the promisor. *Id.* at 494. Therefore, the obligation is only effective when a "competent juridical act" produces it. *Id.* The Court further explained that the mere expression or utterance of an intention or desire is not sufficient to create an enforceable right. *Id.* at n. 15.

In a later decision, the Court elaborated on this doctrine by stating that "in the autonomous juridical construction which shapes the rule of not going against a person's own acts, the effect is produced in an objective manner, in which the true will of the author of the acts does not count at all[;]" the enforceability of these acts arises from the trust these acts produce in third persons, because going against these acts constitutes "an attack on good faith." *International General Electric of Puerto Rico Inc.*, 104 D.P.R. 871, 876–77, 4 Official Translations at 1229. The enforceability of the unilateral intention is derived from the principle or presumption that people act in good faith and that no one can "go against his own acts ...[.]" *Id. See also* 1–2 Puig Brutau, *Fundamentos de Derecho Civil* 82 (1959) (a unilateral declaration may influence the conduct of others, and if it does, it may be necessary to protect the trust ("confianza") which arose from that conduct).

■ This concept is parallel to the English law doctrine of "estoppel" so that a unilateral act prevents or estops the promisor from behaving in a way which is inconsistent or contradictory to the unilateral act. *International General Electric of Puerto Rico*, 104 D.P.R. at 878. The principle is well known as promissory estoppel. The most commonly cited source providing

---

9. In an Initial Scheduling Conference Order dated August 25, 1988, plaintiff was ordered to produce the documents required by the "established norms," as referred to in the letter which was the alleged express guaranty. The documents include an approved check requisition, a purchase order, and the approved receiving document ("conduce"). Plaintiff has never submitted these documents.

10. The Courts of Puerto Rico have justified the creation of this doctrine by citing to Article 7 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 7 (1968), adopted from Article 6 of the Spanish Civil Code, which provides that:

> [w]hen there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration.

the best definition of promissory estoppel is the *Restatement (Second) of Contracts,* which explains that:

A promise which the promisor should *reasonably expect to induce action* or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires ... *[t]he promisor is affected only by reliance which he does or should foresee,* and enforcement must be necessary to avoid injustice. Satisfaction of the latter requirement may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting ... and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant.

Restatement (Second) of Contracts § 90 (1981); comment (b) to § 90 (emphasis added). *See also In re Phillips Petroleum Securities Litigation,* 881 F.2d 1236, 1250 (3rd Cir.1989); *Granfield v. Catholic University of America,* 530 F.2d 1035, 1041 (D.C.Cir.), *cert. denied,* 429 U.S. 821, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976). Essentially, promissory estoppel under the Restatement and Puerto Rican law is the same: if a promisee reasonably and in good faith relies on a promise, the promisor is bound to the extent necessary to avoid injustice. *Santoni,* 677 F.2d at 178.

■ In the factual scenario before the Court, the plaintiff asserts that CCA induced it to grant April Agro a credit line of $300,000.00 and to deliver more merchandise to April Agro in March and April of 1986. The parties have agreed that on April 3, 1986, plaintiff was paid $40,150.30, and on April 15, 1986, plaintiff was paid $49,106.72, for goods plaintiff had delivered to April Agro, even though the "cartons and sacks" line item had been ex-hausted by December of 1985. *See* Pretrial Order, Statement of Uncontested Facts # 5. We conclude that these payments to International Paper could be construed as a promise or the "competent juridical act" creating an enforceable obligation which induced International to ship more deliveries to April Agro. Because the facts related to the circumstances surrounding these payments are insufficiently developed, we cannot conclude that such reliance was, as a matter of law, unreasonable, unforeseeable, and therefore unenforceable. Defendant CCA has failed to sustain its *Celotex* burden of demonstrating an absence of evidence to support the plaintiff's case. Consequently, we are compelled to deny its summary judgment motion based on this issue.

## V. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment on the issue of the express guaranty is GRANTED. Because the facts in the record are insufficiently developed for the Court to conclude that, as a matter of law, plaintiff's reliance on further payment was unforeseeable and unreasonable, the defendant's summary judgment motion on this issue is hereby DENIED.

IT IS SO ORDERED.