USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 97-1293 GARITA HOTEL LIMITED PARTNERSHIP d/b/a GARITA HOTEL CORPORATION, Plaintiff, Appellant, v. PONCE FEDERAL BANK, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Daniel R. Dominguez, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Gibson,* Senior Circuit Judge, ____________________ and Pollak,** Senior District Judge. _____________________ ____________________ Eric A. Tulla with whom Rivera Tulla & Ferra was on brief for _____________ _____________________ appellant. J. Anthony Downs with whom A. Lauren Carpenter, Goodwin, Procter ________________ ____________________ _________________ & Hoar, Harold D. Vicente and Vicente & Cuebas were on brief for ______ __________________ _________________ appellee.  ____________________ September 5, 1997 ___________________ _____________________ *Hon. John R. Gibson, of the Eighth Circuit, sitting by designation. **Of the Eastern District of Pennsylvania, sitting by designation. Per Curiam. In the district court, Garita Hotel claimed __________ that Ponce Federal Bank had unconditionally contracted to lend Garita $6 million for the expansion, renovation and operation of a hotel complex in Carolina, Puerto Rico, and that the bank breached that contract when it refused to advance funds unless Garita obtained a casino license. The district court, acting after a remand from this court, Garita ______ Hotel L.P. v. Ponce Fed. Bank, 958 F.2d 15 (1st Cir. 1992) , __________ _______________ granted summary judgment to Ponce Federal. Garita's appeal to this court followed. We review the district court's grant of summary judgment de novo, drawing reasonable inferences in Garita's favor. _______ Grenier v. Vermont Log Bldgs., Inc., 96 F.3d 559, 562 (1st _______ _________________________ Cir. 1996). On the record before the district court, most of the undisputed facts strongly suggested that approval of the casino license had been an understood condition of the loan. Garita's main argument to the contrary rests on an alleged oral statement to Garita representatives, by a Ponce Federal agent in September 1986, that the bank had "approved" the loan. Internal bank documents arguably corroborate the making of this statement. Under Puerto Rico law, a commercial contract must be corroborated, and this requirement extends not just to the existence of an agreement but also to its essential terms. Vila & Hnos, Inc. v. Owens Ill. de Puerto Rico, 17 P.R. ___________________ ___________________________ -2- -2- Offic. Trans. 987, 997-1000 (1986). The district court invoked this requirement, holding that there was certainly no corroboration for the claim that the bank had agreed to make the loan unconditionally and without regard to the approval of the casino license. On appeal, Garita argues that the loan agreement should not have been classified as a commercial contract. A Puerto Rican statutory provision defines a loan as commercial if (1) at least one party is a "merchant" and (2) the loan proceeds "are destined to commercial transactions." 10 L.P.R.A. 1651; see id. 1001 (defining merchant). ___ ___ Here, where an established bank proposed to extend a sizable loan to an experienced hotel and casino management company for the purpose of renovating and operating a luxury hotel- casino complex, we agree with the district court that whatever contract the parties may have formed is commercial in nature under Puerto Rican law. See FDIC v. Consolidated ___ ____ ____________ Mortgage & Fin. Corp., 805 F.2d 14, 18 (1st Cir. 1986). _____________________ Garita contends that the loan was not commercial because it was extended for a purpose (hotel renovation) that differed from Garita's traditional business (hotel management). It is true that courts have found noncommercial transactions where borrowed funds were used for personal purposes, see, e.g., FDIC v. Martinez Almodavar, 671 F. Supp. ___ ____ ____ __________________ 851, 868-70 (D.P.R. 1987); or where the loan was apparently -3- -3- made for largely personal reasons, see, e.g., Barcel & Co. ___ ____ ______________ v. Olmo Reyes, 48 P.R.R. 239, 241-42 (1935). But any loan __________ agreement between Garita and Ponce Federal was for the clearly commercial purpose of real estate development. See ___ Consolidated Mortgage, 805 F.2d at 18. _____________________ Garita also relies on FDIC v. Francisco Investment ____ _____________________ Corp., 638 F. Supp. 1216 (D.P.R. 1986), rev'd on other _____ _______________ grounds, 873 F.2d 474 (1st Cir. 1989). There, the district _______ court held that a loan to a corporation controlled by doctors, who borrowed the money to buy all the shares of an incorporated nursing home, intending to operate it as a hospital or other medical facility, was not commercial. This court had no occasion to resolve the issue. Francisco, 873 _________ F.2d at 476. Francisco rested heavily on the notion that medical _________ practice was inherently not a "commercial" endeavor within the specialized meaning of section 1651, Francisco, 638 F. _________ Supp. at 1218-19, a notion that has little application to a hotel and casino company proposing a new hotel and casino venture. There is some language in Francisco arguably more _________ helpful to Garita, but that language may itself be in some tension with Puerto Rico case law indicating that a loan may be "commercial" even though the planned use of funds differs from the borrower's historical business. See, e.g., Vila & ___ ____ ______ Hnos, 17 P.R. Offic. Trans. at 990, 995-96 (corporation ____ -4- -4- engaged in transportation of sand and stone sought financing to purchase property capable of supplying these materials). Thus, we agree with the district court that the loan agreement in this case was a commercial contract for which corroborating evidence was required as to the existence of the agreement and its essential terms. Nothing in the record corroborates Garita's contention that Ponce Federal agreed to a loan regardless of government approval of the planned casino. Summary judgment was properly granted. Affirmed. ________ -5- -5-